PEOPLE v CAIN

Docket No. 301492. Submitted December 4, 2012, at Detroit. Decided
December 20, 2012, at 9:00 a.m. Leave to appeal sought.

A jury in the Wayne Circuit Court, Michael M. Hathaway, J.,
convicted Darryl W. Cain of carjacking, MCL 750.529a; unlawfully
driving away a motor vehicle (UDAA), MCL 750.413; being a felon
in possession of a firearm (felon-in-possession), MCL 750.224f; and
possessing a firearm during the commission of a felony (felony-
firearm), MCL 750.227b, for approaching a car that was stopped at
a red light, ordering the driver out at gunpoint, and stealing the
car along with the driver's pants, boots, wallet, and cell phone.
Defendant appealed.

The Court of Appeals *held*:

1. The prosecutor's statements regarding the victim's bravery
and honesty did not amount to plain error requiring reversal.
Prosecutors may not comment on their personal knowledge or
belief with respect to a witness's credibility, but they may argue
and make reasonable inferences from the evidence to support a
witness's truthfulness and may respond to defense allegations that
the prosecution's witnesses testified dishonestly by arguing that
the witnesses had no motive to lie. The prosecutor's comments
were made in response to defense counsel's challenges to the
victim's credibility during closing argument and did not imply that
she had special knowledge about the victim's truthfulness. Any
prejudice was cured by the court's jury instructions. Because the
prosecutor's statements were permissible, defense counsel was
also not ineffective for failing to object to them.

2. The trial court did not violate defendant's constitutional
right to a jury trial by referring to him as a perpetrator in front of
the jury. A defendant's constitutional right to a fair and impartial
trial is violated when the trial court's conduct pierces the veil of
judicial impartiality through conduct or comments that unduly
influence the jury. Under the Sixth and Fourteenth Amendments
of the United States Constitution, a criminal defendant is entitled
to a jury determination on all elements of the charges against him
or her. A court may not direct a guilty verdict. The trial court did
not instruct the jury that defendant had committed the carjacking;

rather, the court restated the evidence already on record, which was that the victim had identified defendant as the perpetrator of the crime. Further, the challenged statement was made in isolation, the court instructed the jury that the court's statements did not constitute evidence and that defendant was presumed innocent, and the prosecution had already presented considerable evidence linking defendant to the crime. Any error that occurred was not outcome-determinative.

3. Convicting defendant of both carjacking and UDAA did not violate the Double Jeopardy Clauses of the United States and Michigan Constitutions. No double jeopardy violation occurs if the Legislature clearly expressed an intent to allow multiple punishments for two offenses. If the Legislature did not clearly express that intent, the same-elements test is employed to determine whether each offense contains an element not contained in the other; if not, they are the same offense and the Double Jeopardy Clauses bar additional punishment and successive prosecution. The carjacking statute, MCL 750.529a, was amended by 2004 PA 128, along with the statutes governing robbery and armed robbery, and now provides that a person who uses force or violence or the threat of force or violence in the course of committing a larceny of a motor vehicle, including acts that occur in an attempt to commit the larceny or during commission of the larceny, is guilty of carjacking. As a result of 2004 PA 128, carjacking, like robbery and armed robbery, no longer requires a completed larceny to support a conviction. The UDAA statute, MCL 750.413, states that any person who willfully and without authority takes possession of and drives or takes away any motor vehicle belonging to another is guilty of a felony. A carjacking conviction requires proof of the use of force or violence, or the threat of force or violence, while a UDAA conviction does not. A UDAA conviction requires the completed larceny of a motor vehicle, while the carjacking statute does not. Therefore, convicting a defendant of both offenses does not violate double jeopardy protections.

4. The trial court did not err by failing to suppress evidence on the ground that police officers lacked probable cause to arrest defendant. A motion to suppress evidence must be made before trial or at trial with the trial court's permission. Although defendant asked the court about an evidentiary hearing before trial, he never requested an evidentiary hearing and never argued that his arrest was unlawful or that any evidence should be suppressed. After the court explained the purpose of an evidentiary hearing, defendant moved on to a different subject. Further, because there was probable cause to arrest defendant, it would have been

erroneous to suppress any evidence as the fruit of an unlawful arrest. A police officer may arrest a person without a warrant if he or she has reasonable cause to believe that a felony has been committed and that the particular person committed it. An individual who has been lawfully arrested may be searched without further justification. The arresting officer saw defendant standing near the carjacked vehicle with the hood up in the backyard of an apparently vacant home where another stolen vehicle was found. This provided reasonable cause to believe that defendant was involved in the carjacking or a related felony such as receiving and concealing stolen property.

5. The court did not err by admitting evidence from a photographic lineup. Generally, a photographic lineup should not be used for identification when the suspect is in custody. However, this rule is subject to certain exceptions, including when a corporeal lineup is not feasible because there are insufficient numbers of people available with the defendant's physical characteristics. In this case, there were not enough young black men at the police station with physical characteristics similar to defendant's. Under the circumstances, a photographic lineup was proper given that defendant would have suffered significant prejudice if he had been placed in a corporeal lineup with men of different races or ages. Further, the photographic lineup was not unduly suggestive. An identification procedure violates a defendant's right to due process of law when it is so impermissibly suggestive that it gives rise to a substantial likelihood of misidentification. The photographic array consisted of six mug shots, one of defendant and five others of men of similar age with similar complexions, facial hair, and haircuts. There was no indication that this process was impermissibly suggestive or that it gave rise to a substantial likelihood of misidentification.

6. The delay between defendant's arrest and his arraignment did not constitute plain error affecting defendant's substantial rights. An individual who has been arrested must be brought before a magistrate for arraignment without unnecessary delay under MCL 764.13 and MCL 764.26. A delay of more than 48 hours after arrest is presumptively unreasonable unless there are extraordinary circumstances. The exclusionary rule applies whenever a statutorily unlawful detention has been employed as a tool to directly procure any type of evidence from a detainee; however, an improper delay does not entitle a defendant to dismissal of the prosecution. Although the delay between defendant's arrest on June 7, 2010, and arraignment on June 10, 2010, was presump-

tively unreasonable, the proper remedy was the suppression of any evidence directly procured as a result of that delay, and no such evidence existed.

7. The alleged failure of the prosecution to provide defendant with a copy of the felony complaint and the felony warrant did not constitute plain error requiring reversal. Due process requires the prosecution to disclose evidence in its possession that is exculpatory and material, regardless of whether the defendant requests disclosure. MCR 6.101 provides that a complaint must include the substance of the accusation against the accused and the name and statutory citation of the offense and must be signed and sworn to before a judicial officer or court clerk. MCR 6.104(D) provides that if an individual is arrested without a warrant, a complaint must be filed at or before the arraignment. When a court receives the complaint and finds probable cause, the court must either endorse the complaint or issue a warrant. Both the complaint and the warrant were part of the lower court file, signed by a magistrate and file-stamped for June 9, 2010. In addition, the court's register of actions indicated that defendant was arraigned on the warrant on June 10, 2010. MCR 6.104(E)(1) required the court to inform defendant of the offenses charged and their possible prison sentences at the arraignment, and there were no allegations or indications that this did not occur. Further, when trial was set to begin, defense counsel specifically stated that he had a copy of the complaint. Even if the prosecution had been required to provide defendant with a copy of both the complaint and the warrant, the failure to do so did not constitute plain error given that defendant was made aware of the charges against him at his arraignment and that there was clearly probable cause for his arrest.

8. Defendant's argument that his convictions must be set aside because the arrest warrant was based on a complaint that lacked facts and contained only legal conclusions was without merit. Under MCL 764.1a, the issuance of an arrest warrant requires the presentation of a proper complaint alleging the commission of an offense and a finding of reasonable cause to believe that the individual accused in the complaint committed that offense. A finding of probable cause can be based on the factual allegations of the complainant in the complaint, the complainant's sworn testimony, the complainant's affidavit, or the supplemental sworn testimony or affidavits of other individuals presented by the complaint or required by the magistrate. After defendant was arrested without a warrant, the prosecution filed a complaint listing each offense with which defendant was charged, along with statutory citations and brief explanations for each offense, as

required by MCR 6.101(A). The complaint was also signed by and sworn to before a magistrate, as required by MCR 6.101(B). The magistrate found probable cause to believe that defendant had committed the offenses charged and issued a warrant for his arrest. This finding was supported by the allegations in the complaint that defendant had used a firearm and the threat of force or violence to take the victim's car, that defendant drove the car away, and that defendant had a previous felony conviction and was ineligible to carry a firearm. These factual allegations provided probable cause to issue a warrant for defendant's arrest with respect to the offenses for which he was ultimately convicted. A lack of probable cause with respect to any other charges could not amount to plain error because defendant was not convicted of those offenses.

9. Defendant's convictions of both felon-in-possession and felony-firearm did not violate double jeopardy principles because the Legislature intended to allow the imposition of an additional sentence whenever a person possessing a firearm committed a felony other than those explicitly enumerated in the felony-firearm statute, which do not include felon-in-possession.

10. The trial court did not lack jurisdiction over defendant because the prosecution did not timely file an information. Pursuant to MCR 6.112(C), the prosecutor must file the information or indictment on or before the date set for the arraignment. Although an information and amended information appear in the court file, they were not file-stamped by the court. However, any error was harmless under MCR 6.112(G), which provides that absent a timely objection and a showing of prejudice, a court may not dismiss an information or reverse a conviction because of an untimely filing. Defendant did not timely object or show prejudice. Defendant was represented by counsel, who had a copy of the complaint and thus knew the charges against defendant, and the charges were presumably read at defendant's arraignment pursuant to MCR 6.104(E)(1).

Affirmed.

1. PROSECUTING ATTORNEYS — MISCONDUCT — VOUCHING FOR CREDIBILITY OF WITNESSES.

Prosecutors may not comment on their personal knowledge or belief with respect to a witness's credibility; prosecutors may argue and make reasonable inferences from the evidence to support a witness's truthfulness and may respond to defense allegations that the prosecution's witnesses testified dishonestly by arguing that the witnesses had no motive to lie.

2. Criminal Law — Carjacking — Elements of Carjacking — Constitutional Law — Double Jeopardy — Unlawfully Driving Away a Motor Vehicle.

A completed larceny is not necessary to sustain a conviction for the crime of carjacking; a defendant may be convicted of both carjacking and unlawfully driving away a motor vehicle without violating the constitutional protections against double jeopardy (US Const, Am V; Const 1963, art 1, § 15; MCL 750.529a, 750.413).

3. Criminal Law — Pretrial Identification Procedures — Photographic Displays — Lineups.

A photographic lineup generally should not be used to identify the person accused of having committed a crime when the suspect is in custody; this rule is subject to exceptions, including when a corporeal lineup is not feasible because there are insufficient numbers of people available with the defendant's physical characteristics; an identification procedure violates a defendant's right to due process of law when it is so impermissibly suggestive that it gives rise to a substantial likelihood of misidentification.

4. Criminal Law — Evidence — Prearraignment Delay.

An individual who has been arrested must be brought before a magistrate for arraignment without unnecessary delay under MCL 764.13 and MCL 764.26; a delay in arraignment of more than 48 hours after the arrest is presumptively unreasonable unless there are extraordinary circumstances; an improper delay in arraignment may necessitate the suppression of evidence obtained as a result of that delay, but it does not entitle a defendant to a dismissal of the charges.

5. Constitutional Law — Double Jeopardy — Felon-in-Possession — Felony-Firearm.

A defendant may be convicted of both being a felon in possession of a firearm and possessing a firearm during the commission of a felony without violating the constitutional protections against double jeopardy (US Const, Am V; Const 1963, art 1, § 15; MCL 750.224f, 750.227b).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Margaret Gillis Ayalp*, Assistant Prosecuting Attorney, for the people.

*Neil J. Leithauser* and Darryl W. Cain, *in propria persona*, for defendant.

Before: SAAD, P.J., and K. F. KELLY and M. J. KELLY, JJ.

SAAD, P.J. A jury convicted defendant of carjacking, MCL 750.529a, unlawfully driving away a motor vehicle (UDAA), MCL 750.413, two counts of receiving and concealing a stolen motor vehicle, MCL 750.535(7), being a felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant appeals and, for the reasons set forth below, we affirm.

## I. FACTS AND PROCEEDINGS

This case arises from a carjacking that occurred in Detroit on June 4, 2010. Courtney Spires was driving home in his mother's 1995 gold Saturn. When he stopped at a red light at the intersection of East Grand Boulevard and Mack, a van pulled up next to Spires on the driver's side of his vehicle. Spires could not see the driver of the van, but he testified that defendant appeared at his window, pointed a silver revolver at him, and told him to get out of the car. Defendant ordered Spires to take off his pants and boots and stole them, along with Spires's wallet and cell phone. Defendant then sat in the driver's seat of the Saturn, a woman got into the front passenger seat, and they drove away as the van followed. Shortly thereafter, Spires reported the crime to the police and described the perpetrators as a black male and a black female.

On June 7, 2010, at about 12:40 p.m., Sergeant Frank Carroll of the Detroit Police Department was driving in

an unmarked car near 11908 Wayburn in Detroit.
Carroll worked with a multijurisdictional task force
focused on automobile theft in Detroit and other nearby
communities, including Grosse Pointe. As he was driv-
ing past 11908 Wayburn, Carroll noticed a gold Saturn
in the backyard of an apparently vacant home. Two
black males, one of whom was defendant, were standing
near the car's raised hood. Using binoculars, Carroll
was able to see the car's license plate number. He called
the license plate number in to the Grosse Pointe Park
police dispatcher and discovered that the Saturn was a
carjacked vehicle.

Carroll called other officers and, when they arrived,
they walked into the backyard. At that time, Carroll
saw a third man near the front of the Saturn. He also
saw a gray Ford Explorer in the backyard, which he
learned was also a stolen vehicle. In addition, Carroll
saw tools in the yard, including a lug wrench that was
attached to a wheel of the Ford Explorer. Carroll and his
team placed defendant and the two other men, Denzel
Walker and William Johnson, under arrest. The officers
searched defendant and found a key for the Saturn and
two bullets. They impounded and searched the van that
had been used in the carjacking and found a wallet and
several cell phones, including Spires's.

Carroll took defendant, Walker, and Johnson to the
Grosse Pointe Park police station for processing. Carroll
informed defendant of his rights, asked defendant ques-
tions, and wrote down defendant's responses. Defen-
dant said that someone had told him about the stolen
cars and he denied ever carjacking any. He said that he
was taking parts off the Ford Explorer to scrap them.
Defendant denied owning a handgun and said that he
found the bullets that were in his pocket. He then
refused to sign the statement.

On June 8, 2010, officers called Spires to tell him they had recovered his mother's car. Spires went to the Grosse Pointe Park police station to identify the perpetrator in a photographic lineup. Although defendant was in custody at the station, Carroll explained that the station did not have enough young black men or the facilities required to conduct a live lineup. To conduct the photographic lineup, Sergeant Cregg Hughes compiled six mug shots, one of defendant and five others of men of similar age, with similar complexions, facial hair, and haircuts. When Spires saw the photographs, he immediately identified defendant from the array.

As noted, on October 27, 2010, a jury convicted defendant of carjacking, UDAA, two counts of receiving and concealing a stolen motor vehicle, felon-in-possession, and felony-firearm.

## II. DISCUSSION

### A. CONDUCT OF THE PROSECUTOR

Defendant argues that the prosecutor improperly vouched for Spires's credibility during her rebuttal argument. " 'Review of alleged prosecutorial misconduct is precluded unless the defendant timely and specifically objects, except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice.' " *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008), quoting *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Defendant did not object when the prosecutor made the statements at issue during her rebuttal argument. Therefore, this issue is unpreserved. Generally, this Court reviews unpreserved claims of prosecutorial misconduct for plain error. *Unger*, 278 Mich App at 235. " 'Reversal is warranted only

when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings.' " *Id.*, quoting *Callon*, 256 Mich App at 329. In addition, there is no error if " 'a curative instruction could have alleviated any prejudicial effect.' " *People v Bennett*, 290 Mich App 465, 476; 802 NW2d 627 (2010), quoting *Callon*, 256 Mich App at 329.

We hold that the prosecutor's statements did not amount to plain error requiring reversal. When considering a claim of prosecutorial misconduct, the prosecutor's statements should be considered in context, which includes defense counsel's arguments. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009); see also *Bennett*, 290 Mich App at 475. It is improper for prosecutors to comment on their personal knowledge or belief with respect to a witness's credibility. *Bennett*, 290 Mich App at 478. It is also improper for a prosecutor to " 'vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness.' " *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011), quoting *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995).

Although a prosecutor may not vouch for the credibility of a witness, a prosecutor may argue and make reasonable inferences from the evidence to support a witness's truthfulness. *Bennett*, 290 Mich App at 478. In addition, a prosecutor is generally "given great latitude to argue the evidence and all inferences relating to his theory of the case." *People v Thomas*, 260 Mich App 450, 456; 678 NW2d 631 (2004). When a defendant argues that the prosecution's witnesses testified dishonestly, the prosecutor may respond by arguing that the witnesses had no motive to lie. See *id.*

Defendant argues that the following statements by the prosecutor improperly bolstered Spires's credibility:

I don't, I don't think he would even come in — I don't think he would come in here and lie. Absolutely not. He was brave coming in here and indicating that because stuff gets around in this city and, and he wouldn't have done it unless it was absolutely what had happened to him.

\* \* \*

You know, I would say to you that this — I think he was very honest about everything. He tried, you know, to be very honest. And the young man was very brave in coming here. And I ask that you find [defendant] guilty on all charges in the information.

These statements did not amount to plain error. The prosecutor's comments were made in response to defense counsel's numerous challenges to Spires's credibility during his closing argument. Again, a prosecutor's statements should be viewed in the context of the defendant's arguments. See *Seals*, 285 Mich App at 22. After defendant argued that Spires was not a credible witness, the prosecutor could permissibly argue in response that Spires had no motive to lie. See *Thomas*, 260 Mich App at 456. In essence, this was the prosecutor's argument when she said that Spires was brave to come in and testify, presumably because he could be retaliated against for testifying against defendant.

Further, the prosecutor's comments did not imply that she had special knowledge about Spires's truthfulness. Rather, the prosecutor made logical inferences from the evidence that a person generally does not go to the trouble of fabricating a carjacking and lying about who did it. The jury heard that Spires reported the carjacking to the police the night of June 4, 2010, and went to the police station on June 8, 2010, to view a

photo array of suspects and give another statement. In addition, the jury heard Spires testify at trial. From this evidence, the prosecutor could reasonably infer that Spires would go to these lengths only if he had actually been carjacked.

Moreover, were we to find any impropriety in the prosecutor's remarks, any alleged prejudice was cured by the trial court's jury instructions. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235 (citations omitted). The trial court reminded the jurors that they took an oath to return a verdict based only on the evidence and the court's instructions on the law. It further instructed the jurors that it was their responsibility alone to determine the facts of the case. The court told the jury that the attorneys' statements and arguments were not evidence and should not be considered during deliberations. Moreover, the court also instructed the jurors that they should evaluate the witnesses' credibility on the basis of their own observations and common sense. For these reasons, defendant has not demonstrated plain error.

Defendant also claims his attorney was ineffective for failing to object to the prosecutor's remarks.[1] As dis-

---

[1] To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that " 'counsel's representation fell below an objective standard of reasonableness' " and that "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Smith v Spisak*, 558 US 139; 130 S Ct 676, 685; 175 L Ed 2d 595 (2010), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Generally, counsel has discretion to choose a method of trial strategy, and this Court will not substitute its own judgment or evaluate counsel's performance with the benefit of hindsight. *People v Payne*, 285 Mich App 181, 190; 774 NW2d

cussed, no error occurred because the prosecutor made reasonable inferences on the basis of the evidence presented and, therefore, counsel was not ineffective for failing to object. See also *People v Russell*, 297 Mich App 707, 720; 825 NW2d 623 (2012).

### B. TRIAL COURT'S REFERENCE TO DEFENDANT

Defendant maintains that the trial court violated his right to a trial by jury when the following exchange occurred during defense counsel's cross-examination of Sergeant Carroll:

> *Defense Counsel*: Anywhere does it ever show that the other two defendants were ever put in a photo show up?
>
> *Sergeant Carroll*: No, not to my knowledge.
>
> *Defense Counsel*: Yet you charged [defendant] with the carjacking?
>
> *Prosecutor*: I'd object. That's not true, your honor.
>
> *Defense Counsel*: You requested a warrant for it and got it.
>
> *The Court*: Well, it's — I'm not sure how or why it's relevant.
>
> *We know that from this witness the only perpetrator that was in the photo lineup was the defendant.* Beyond what the others were doing or why they weren't or who charged them or who made the decision to charge, I don't know how that's relevant. They weren't in the photo lineup. [Emphasis added.]

Specifically, defendant argues that the trial court's reference to him as the "perpetrator" in front of the jury directed a verdict of guilt in violation of the Sixth and Fourteenth Amendments of the United States Constitution.

---

714 (2009). Counsel is not ineffective for failing to make a meritless argument or raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

This issue is unpreserved because defendant raised it for the first time on appeal. *People v Metamora Water Serv*, 276 Mich App 376, 382; 741 NW2d 61 (2007). This Court reviews unpreserved constitutional errors for plain error affecting substantial rights. *People v Bauder*, 269 Mich App 174, 180; 712 NW2d 506 (2005). A defendant has the right to a fair and impartial trial under both the United States and Michigan Constitutions. See US Const, Am VI; Const 1963, art 1, § 20. This right is violated when the trial court's conduct "pierces the veil of judicial impartiality . . . ." *People v Conley*, 270 Mich App 301, 307-308; 715 NW2d 377 (2006) (citation and quotation marks omitted). Although a trial court has significant discretion and power with respect to trial proceedings, this power is limited. *Id.* A trial court's conduct will be held to have pierced the veil of judicial impartiality, thus requiring reversal of the defendant's convictions, when "the trial court's conduct or comments 'were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial.' " *Id.* at 308, quoting *People v Rogers*, 60 Mich App 652, 657; 233 NW2d 8 (1975) (citation and quotation marks omitted).

Under the Sixth and Fourteenth Amendments, a criminal defendant is indisputably entitled to a jury determination on all elements of the charges against him. *People v Bearss*, 463 Mich 623, 629; 625 NW2d 10 (2001). It is impermissible for a court to direct a guilty verdict. *Id.* at 630. However, the trial court here did not instruct the jury that defendant committed the carjacking. Rather, the court merely restated the evidence already on record—that Spires identified defendant as the perpetrator of the crime. This in no way directed the jury to reach a guilty verdict.

Further, were we to conclude that the trial court misspoke, the single statement was made in isolation and the court instructed the jury that the court's statements do not constitute evidence. The court also instructed the jurors that defendant was presumed innocent and that it was their duty to weigh the evidence and determine whether defendant was guilty beyond a reasonable doubt. Finally, the prosecution had already presented considerable evidence linking defendant to the crime. Carroll testified that he found defendant near the stolen Saturn with the hood up, defendant had a key for the Saturn in his pocket, and, again, Spires unequivocally identified defendant as the carjacker during the photographic lineup and at trial. Therefore, if any error occurred, it was clearly not outcome-determinative.

### C. DOUBLE JEOPARDY

Defendant contends that his convictions for both carjacking and UDAA violate the Double Jeopardy Clauses of the United States and Michigan Constitutions, which prohibit imposing multiple punishments for the same offense. While defendant failed to raise this issue at trial, we will address it because "a double jeopardy issue presents a significant constitutional question that will be considered on appeal regardless of whether the defendant raised it before the trial court." *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008). However, this Court reviews "an unpreserved claim that a defendant's double jeopardy rights have been violated for plain error that . . . affected the outcome of the lower court proceedings." *Id.*

If the Legislature clearly expressed an intent to allow the imposition of multiple punishments, no double

jeopardy violation occurs when a court does so. *People v Smith*, 478 Mich 292, 296; 733 NW2d 351 (2007); *People v Garland*, 286 Mich App 1, 4; 777 NW2d 732 (2009). When the Legislature has not clearly intended to impose multiple punishments, the same-elements test is used to determine if multiple punishments are permissible under the Double Jeopardy Clauses of the United States and Michigan Constitutions. See *United States v Dixon*, 509 US 688, 696; 113 S Ct 2849; 125 L Ed 2d 556 (1993); *Smith*, 478 Mich at 296. The same-elements test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Dixon*, 509 US at 696; see also *Smith*, 478 Mich at 296.

The carjacking statute, MCL 750.529a, provides:

> (1) A person who in the course of committing a larceny of a motor vehicle uses force or violence or the threat of force or violence . . . is guilty of carjacking . . . .

> (2) As used in this section, "in the course of committing a larceny of a motor vehicle" includes acts that occur *in an attempt to commit the larceny*, or during commission of the larceny . . . . [Emphasis added.]

The UDAA statute, MCL 750.413, states:

> Any person who shall, willfully and without authority, take possession of *and drive or take away* . . . any motor vehicle, belonging to another, shall be guilty of a felony . . . . [Emphasis added.]

It is clear that a carjacking conviction requires proof of the use of force or violence, or the threat of force or violence, while a UDAA conviction does not. See MCL 750.413; MCL 750.529a. The issue is whether UDAA contains an element that carjacking does not. Otherwise, UDAA is a lesser included offense of carjacking and the same offense

for purposes of the same-elements test. See *Dixon*, 509 US at 696; see also *Smith*, 478 Mich at 296.

In two unpublished opinions, *People v Johnson*, unpublished opinion per curiam of the Court of Appeals, issued October 14, 2010 (Docket Nos. 292238 and 292920), and *People v Baker*, unpublished opinion per curiam of the Court of Appeals, issued May 20, 2010 (Docket No. 289844), this Court ruled that carjacking and UDAA are the same offense for purposes of double jeopardy because carjacking requires a completed larceny. However, a recent case from our Supreme Court, *People v Williams*, 491 Mich 164; 814 NW2d 270 (2012), is dispositive on this issue. The question in *Williams*, 491 Mich at 166, was whether a conviction for armed robbery required a completed larceny. The Court noted that in 2004 PA 128, the Legislature amended three of the statutes governing robbery offenses.[2] Before the 2004 amendments, the general robbery statute stated, in part:

> Any person who shall assault another, and shall feloniously *rob, steal and take* from his person, or in his presence, any money or other property, which may be the subject of larceny . . . shall be guilty of a felony . . . . [MCL 750.530, as enacted by 1931 PA 328 (emphasis added).]

After the robbery statute was amended in 2004, it read, in relevant part:

> (1) Any person who, *in the course of committing a larceny* of any money or other property that may be the subject of larceny . . . is guilty of a felony . . . .
>
> (2) As used in this section, "in the course of committing a larceny" includes acts that occur *in an attempt to commit the larceny*, or during commission of the larceny . . . . [MCL 750.530 (emphasis added).]

---

[2] 2004 PA 128 amended MCL 750.529 (armed robbery), MCL 750.529a (carjacking), and MCL 750.30 (robbery).

The Supreme Court held that, in 2004 PA 128, the Legislature "demonstrated a clear intent to remove the element of a *completed* larceny, signaling a departure from Michigan's historical requirement and its common law underpinnings." *Williams*, 491 Mich at 172. Consequently, "an attempted robbery or attempted armed robbery with an incomplete larceny is now sufficient to sustain a conviction under the robbery or armed robbery statutes, respectively." *Id.*

Like the armed robbery statute, the carjacking statute was amended to describe the offense as one that occurs during the course of committing a larceny, with that phrase defined as including acts "that occur in an attempt to commit the larceny . . . ." MCL 750.529a; see also MCL 750.530. In *People v Williams*, 288 Mich App 67, 79-80; 792 NW2d 384 (2010), which was affirmed by *Williams*, 491 Mich at 184 (discussed above), this Court emphasized the almost identical language of the robbery and carjacking statutes. This Court observed "that the revised statute was intended to include attempts to commit the designated crime." *Williams*, 288 Mich App at 80. As the Supreme Court and this Court ruled in the *Williams* opinions, we also hold that, under MCL 750.529a as amended, a carjacking conviction does not require a completed larceny. Therefore, UDAA contains an element that carjacking does not—the completed larceny of a motor vehicle—and the same-elements test is not violated. See *Dixon*, 509 US at 696; see also *Smith*, 478 Mich at 296. Accordingly, defendant's convictions for both offenses did not violate his double jeopardy rights.

### D. SUPPRESSION OF EVIDENCE

Defendant asserts that the trial court erred by admitting various pieces of evidence because police offic-

ers lacked probable cause to arrest him. A motion to suppress evidence must be made before trial or at trial with the trial court's permission. *People v Gentner, Inc,* 262 Mich App 363, 368; 686 NW2d 752 (2004). In his Standard 4 Brief,[3] defendant claims that he requested an evidentiary hearing on October 25, 2010, to determine the legality of his arrest and the admissibility of evidence. The record reflects that, on October 25, 2010, the day trial was scheduled to begin, defendant expressed his various "grievances" to the trial court, which the court addressed in detail. Defendant and the court had the following exchange about an evidentiary hearing:

> *Defendant*: What about the evidentiary hearing?
>
> *The Court*: What evidentiary hearing?
>
> *Defendant*: All the evidence they have. That's it, just the police report?
>
> *The Court*: The trial is the evidentiary hearing unless there is a[n] issue about the admissibility of any evidence before trial. That's what trials are for. . . .
>
> Now, if you know that there is any specific evidence that you think the prosecution is going to use, which they shouldn't use or shouldn't be allowed to use, then that gets raised in a[n] evidentiary hearing before trial. But this is what I'm trying to get at with you is what such evidence do you think there is? So far I haven't heard you give me any. I haven't heard you tell me what evidence you think they have against you that should not be used or shouldn't be permitted to be used. Nothing so far has registered.
>
> *Defendant*: Can I do a motion to withdraw counsel?

As the transcript shows, defendant never explicitly requested an evidentiary hearing and he never argued that his arrest was unlawful or that any evidence

---

[3] See Administrative Order No. 2004-6.

should be suppressed. After the court explained the purpose of an evidentiary hearing, defendant moved on to a different subject. The trial court did not err by failing to hold an evidentiary hearing that was never requested on an issue—the legality of defendant's arrest—that was never raised.

We further hold that there was probable cause to arrest defendant and that it would have been erroneous to suppress any evidence as the fruit of an unlawful arrest. "A police officer may arrest a person without a warrant if he or she has reasonable cause to believe that a felony has been committed and that the particular person committed it." *People v Cohen*, 294 Mich App 70, 74; 816 NW2d 474 (2011), citing MCL 764.15(1)(d). " 'Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.' " *Id.* at 75, quoting *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996). An individual who has been lawfully arrested may be searched without further justification. *People v Reese*, 281 Mich App 290, 295; 761 NW2d 405 (2008).

In this case, as discussed, Sergeant Carroll testified that he observed defendant standing near a Saturn, with the hood up, in the backyard of an apparently vacant home. Carroll was able to see the license plate number of the Saturn using binoculars. He called the number into the Grosse Pointe Park police dispatcher and discovered that the Saturn had been reported as a carjacked vehicle. Carroll also saw a Ford Explorer in the yard that had been reported stolen. There were tools used to work on cars in the yard, including a lug wrench that was attached to the wheel of the Ford Explorer.

Because there were two stolen vehicles in the yard, Carroll had reasonable cause to believe a felony had been committed. See *Cohen*, 294 Mich App at 74. Further, in light of defendant's proximity to the stolen vehicles, Carroll had reasonable cause to believe that defendant was somehow involved in the carjacking of the Saturn or a related felony, such as receiving and concealing stolen property. Because there was probable cause to arrest defendant, the evidence resulting from that arrest could be introduced at trial. See *Reese*, 281 Mich App at 295; see also *Wong Sun v United States*, 371 US 471, 487-488; 83 S Ct 407; 9 L Ed 2d 441 (1963). Accordingly, defendant is not entitled to relief on this issue.

### E. LINEUP

Defendant argues that the trial court should not have admitted evidence from the photographic lineup because he was in custody and was available for a corporeal lineup and because the lineup was unduly suggestive. Defendant raises this claim for the first time on appeal and, therefore, it is unpreserved. This Court reviews unpreserved constitutional errors for plain error affecting substantial rights. *Bauder*, 269 Mich App at 180.

This Court has held that, generally, a photographic lineup should not be used for identification when the suspect is in custody. *People v Currelley*, 99 Mich App 561, 564; 297 NW2d 924 (1980). However, this rule is subject to certain exceptions, including situations in which a corporeal lineup is not feasible because "there are insufficient numbers of persons available with the defendant's physical characteristics . . . ." *Id.* at 565 n 1. Sergeant Hughes explained that, at the police station, there were not enough young black men with

similar physical characteristics to defendant. Under the circumstances, a photographic lineup was clearly proper. See *id.* at 564-565. Indeed, defendant would have suffered significant prejudice if he had been placed in a corporeal lineup with men of different races or ages.

We further hold that the photographic lineup was not unduly suggestive. "An identification procedure violates a defendant's right to due process of law when it is so impermissibly suggestive that it gives rise to a substantial likelihood of misidentification." *People v Harris*, 261 Mich App 44, 51; 680 NW2d 17 (2004). Hughes testified that he compiled six mug shots for the photographic array, one of defendant and five others of men of similar age with similar complexions, facial hair, and haircuts. There is no indication that this process was impermissibly suggestive or that it gave rise to a substantial likelihood of misidentification. See *Harris*, 261 Mich App at 51.

### F. ARRAIGNMENT

Defendant avers that he was denied due process because, though he was arrested on June 7, 2010, he was not arraigned until June 10, 2010. Defendant failed to raise this issue in the trial court and, therefore, it is unpreserved. *Metamora Water Serv*, 276 Mich App at 382. Again, this Court reviews unpreserved constitutional errors for plain error affecting substantial rights. *Bauder*, 269 Mich App at 180. Defendant must show that the error was clear or obvious and that it was outcome-determinative. *Id.*

An individual who has been arrested must be brought before a magistrate for arraignment "without unnecessary delay . . . ." MCL 764.13; MCL 764.26; see also *People v Manning*, 243 Mich App 615, 622; 624 NW2d 746 (2000). When an individual is arrested

without a warrant, a prompt arraignment is particularly important because it provides a judicial determination of probable cause. *People v Mallory*, 421 Mich 229, 239; 365 NW2d 673 (1984). A delay of more than 48 hours after arrest is presumptively unreasonable unless there are extraordinary circumstances. *Riverside Co v McLaughlin*, 500 US 44, 56-57; 111 S Ct 1661; 114 L Ed 2d 49 (1991). The exclusionary rule applies "whenever a statutorily unlawful detention has been employed as a tool to directly procure *any* type of evidence from a detainee." *Mallory*, 421 Mich at 240-241. However, "[w]hile an improper delay in arraignment may necessitate the suppression of evidence obtained as a result of that delay, the delay does not entitle a defendant to dismissal of the prosecution." *People v Harrison*, 163 Mich App 409, 421; 413 NW2d 813 (1987).

Defendant is correct that he was arrested without a warrant on June 7, 2010, and arraigned on June 10, 2010. Because defendant was arraigned more than 48 hours after his arrest, this delay is presumptively unreasonable. See *Riverside*, 500 US at 56-57. However, the proper remedy for this delay is the suppression of any evidence directly procured as a result of that delay. See *Mallory*, 421 Mich at 240. Defendant claims that his arraignment was delayed because the police were manufacturing evidence and asks this Court "to suppress the evidence as a result of that delay." However, defendant does not specify what evidence was allegedly procured by his unlawful detention. And the record reflects that defendant's position is untenable. Spires identified defendant from a photo lineup on June 8, 2010. The keys to the Saturn, the bullets, and the stolen vehicles were obtained when defendant was arrested, on June 7, 2010. Defendant's statement to Sergeant Carroll was also made on the date of his arrest. Therefore, no evidence was obtained as a direct result of the

"undue delay," which would have begun on June 9, 2010, 48 hours after defendant's arrest. Because there was no evidence to suppress, the delay in defendant's arraignment was not outcome-determinative, and he is not entitled to relief on this issue. See *Bauder*, 269 Mich App at 180.

### G. DOCUMENTS FROM THE PROSECUTION

We reject defendant's claim that the prosecution failed to provide him with a copy of the felony complaint and felony warrant. "Due process requires the prosecution to disclose evidence in its possession that is exculpatory and material, regardless of whether the defendant requests the disclosure." *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007). MCR 6.101 provides in part:

(A) Definition and Form. A complaint is a written accusation that a named or described person has committed a specified criminal offense. The complaint must include the substance of the accusation against the accused and the name and statutory citation of the offense.

(B) Signature and Oath. The complaint must be signed and sworn to before a judicial officer or court clerk.

MCR 6.104(D) provides that if an individual is arrested without a warrant, a complaint must be filed at or before the arraignment. When the court has received the complaint and finds probable cause, the court must either endorse the complaint or issue a warrant. See *id*.

Both the complaint and the warrant are part of the lower court file, signed by Magistrate Steve Lockhart, and file-stamped for June 9, 2010. In addition, the court's register of actions indicates that defendant was arraigned on the warrant on June 10, 2010. At this arraignment, the court was required to inform defen-

dant of the offenses charged and their possible prison sentences. See MCR 6.104(E)(1). There are no allegations or indications that this arraignment did not occur. Therefore, defendant was presumably made aware of the contents of the complaint and the warrant at that time. See *id*. Further, when trial was set to begin on October 25, 2010, defense counsel specifically stated that he had a copy of the complaint. Moreover, we are unaware of any court rule or case that requires the prosecution to give the defendant a copy of both the complaint and the warrant.

Were we to hold that the prosecution was required to provide defendant with a copy of both the complaint and the warrant, the failure to have done so would not constitute plain error. Defendant claims that if he had these documents, he could have objected to the lack of probable cause for his arrest and moved to suppress evidence. It is not clear why defendant needed these documents to object to his arrest, given that he was made aware of the charges against him at his arraignment. See MCR 6.104(E)(1). In addition, there was clearly probable cause to arrest defendant, as discussed above. Therefore, any alleged error would not be outcome-determinative.

### H. CONTENTS OF THE FELONY COMPLAINT

Defendant urges the Court to set aside his convictions on the ground that the arrest warrant was based on a complaint that lacked facts and contained only legal conclusions. Again, this issue is unpreserved and we review it for plain error affecting substantial rights. *Bauder*, 269 Mich App at 180.

The issuance of an arrest warrant requires "(1) the presentation of a proper complaint alleging the commission of an offense and (2) a finding of 'reasonable cause'

to believe that the individual accused in the complaint committed that offense." *Manning*, 243 Mich App at 621, quoting MCL 764.1a(1). A finding of probable cause can be based on "the factual allegations of the complainant in the complaint, the complainant's sworn testimony, the complainant's affidavit, or the supplemental sworn testimony or affidavits of other individuals presented by the complaint or required by the magistrate." *Manning*, 243 Mich App at 621.

On June 7, 2010, defendant was arrested without a warrant. On June 9, 2010, the prosecution filed a felony complaint. The complaint listed each offense with which defendant was charged, along with statutory citations and brief explanations for each offense, as required by MCR 6.101(A). The complaint was also signed by and sworn to before a magistrate, as required by MCR 6.101(B). On June 9, 2010, the magistrate also found probable cause to believe that defendant committed the offenses charged and issued a warrant for his arrest. This finding of probable cause was supported by the allegations in the complaint. The complaint alleged that defendant used a firearm and the threat of force or violence against Spires to take Spires's 1995 Saturn. It also alleged that defendant drove the Saturn away. Finally, the complaint contended that defendant had a previous felony conviction and was ineligible to carry a firearm. Given these factual allegations, there was probable cause to issue a warrant for defendant's arrest with respect to the offenses of which he was ultimately convicted. See *Manning*, 243 Mich App at 621; see also MCL 764.1a. A lack of probable cause with respect to any other charges could not amount to plain error because defendant was not convicted of those offenses. For these reasons, defendant's claim is without merit.

I. FELON-IN-POSSESSION AND FELONY-FIREARM CONVICTIONS

Defendant complains that his convictions of both felon-in-possession and felony-firearm violated double jeopardy principles. In *People v Calloway*, 469 Mich 448, 452; 671 NW2d 733 (2003), the Michigan Supreme Court ruled that the Legislature intended to impose an additional sentence "whenever a person possessing a firearm committed a felony other than those four explicitly enumerated in the felony-firearm statute." The offense of felon-in-possession is not one of the four exceptions specifically listed in the felony-firearm statute. See MCL 750.227b. Therefore, pursuant to clearly established precedent, defendant's convictions for felon-in-possession and felony-firearm did not violate his double jeopardy rights. See *Calloway*, 469 Mich at 452.

J. JURISDICTION

Defendant complains that the trial court lacked jurisdiction over him because the prosecution did not timely file an information. Pursuant to MCR 6.112(C), "[t]he prosecutor must file the information or indictment on or before the date set for the arraignment." The record is unclear with regard to whether the prosecution properly filed an information. Although an information and amended information appear in the court file, they are not file-stamped by the court. If the prosecution did not properly file an information with the trial court, it violated MCR 6.112(C). However, if it was not properly filed, any error was harmless. See MCR 6.112(G); *People v Waclawski*, 286 Mich App 634, 706-707; 780 NW2d 321 (2009). MCR 6.112(G) provides that, "[a]bsent a timely objection and a showing of prejudice, a court may not dismiss an information or reverse a conviction because of an untimely filing . . . ."

Defendant did not make a timely objection and, indeed, raises this issue for the first time on appeal. Defendant also has not made a showing of prejudice. Defendant was represented by counsel, who clearly had a copy of the complaint and, thus, knew the charges against defendant. Defendant was arraigned on the information, and presumably the charges against him were read at that time. See MCR 6.104(E)(1). Defendant has not provided a transcript of the arraignment or otherwise shown that the charges were not read, and defendant has the burden of proving prejudice. See MCR 6.112(G). Accordingly, defendant is not entitled to any relief on this claim.

Affirmed.

K. F. KELLY and M. J. KELLY, JJ., concurred with SAAD, P.J.