# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
March 17, 2015

v

LYNN ALLEN SCOTT,

Defendant-Appellant.

No. 318554
Oakland Circuit Court
LC No. 2013-246072-FH

Before: DONOFRIO, P.J., and RIORDAN and GADOLA, JJ.

PER CURIAM.

A jury convicted defendant of one count of first-degree home invasion, MCL 750.110a(a). He was originally sentenced as a fourth-habitual offender, MCL 769.12, to 12 to 60 years' imprisonment. However, after this Court granted his motion to remand,[1] he was resentenced to a reduced term of 9 to 60 years' imprisonment. Because the lone issue raised by appointed appellate counsel was resolved on remand, the only issues currently before this Court are those raised in defendant's pro se Standard 4 brief, filed pursuant to Supreme Court Administrative Order 2004-6, Standard 4. After considering those issues, we affirm.

In the early morning hours of January 13, 2013, complainant Nobuko Sakaguchi, awoke to discover defendant standing in the entry way of the side door to her home. When the complainant screamed for her adult son in the next room, defendant fled the scene. A tracking dog was immediately dispatched to the complainants' home, but the canine lost the intruder's scent less than a mile from the property. Defendant was eventually apprehended approximately eight hours later when a patrol officer spotted defendant at a bus stop near the complainants' home. At that time, defendant was found with, among other things, a box cutter, screwdriver, two pairs of gloves, a flashlight, some jewelry, and a set of keys belonging to the complainants' house. The keys were typically kept near the door where defendant allegedly entered the home.

## I. EFFECTIVE ASSISTANCE OF COUNSEL

---

[1] *People v Scott*, unpublished order of Court of Appeals, entered May 30, 2014 (Docket No. 318554).

-1-

Defendant raises several issues in his Standard 4 brief, beginning with the assertion that he was denied the effective assistance of trial counsel. Defendant failed to preserve this issue because he did not raise a claim of ineffective assistance of counsel in the trial court by moving for a new trial or requesting an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Therefore, review of this issue is "limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

To establish ineffective assistance of counsel, defendant must show (1) that his trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Lopez*, 305 Mich App 686, 694; 854 NW2d 205 (2014). In his Standard 4 brief, defendant identifies a plethora of allegations in support of his claim of ineffective assistance of counsel. After reviewing defendant's claimed errors, we conclude that defendant has failed to establish that he was denied the effective assistance of counsel.

For his first argument, defendant contends that trial counsel failed to properly investigate and defend the case. Defendant asserts that if counsel had properly investigated, he would have been able to discredit the witnesses' testimony and establish the truthfulness of defendant's assertion that he found the keys and was simply attempting to return them. Failure to make a reasonable investigation can constitute ineffective assistance of counsel. *People v Trakhtenberg*, 493 Mich 38, 51-55; 826 NW2d 136 (2012). However, defendant has failed to identify what additional potential evidence trial counsel failed to pursue. Moreover, defendant testified in his own behalf and was thus provided a full opportunity to explain his version of the events to the jury. Further, defendant's counsel fully cross-examined the witnesses in an attempt to discredit their recollection of the events and their ability to identify defendant as the intruder. Counsel specifically addressed the lighting and weather issues, the witnesses' ability to perceive the perpetrator, Nobuko's need for glasses, Nobuko's failure to identify defendant in the photo array, and the degree of confidence and certainty the witnesses had in their identification of defendant. Defense counsel elicited weaknesses in the witnesses' version of events. Based on the foregoing, defendant has not demonstrated that counsel failed to investigate and defend against the charges.

Next, defendant argues that he was deprived the effective assistance of counsel because counsel failed to effectively cross-examine the police officers involved in the case. Decisions regarding the questioning of witnesses are presumed to be matters of trial strategy, and this Court will not second-guess trial counsel on matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). After reviewing the record, defendant has not overcome the presumption that the manner in which the witnesses were cross-examined constituted reasonable trial strategy.

Defendant argues that trial counsel neglected to cross-examine the police officers regarding the four-day delay in presenting the complainants with either a physical or photographic lineup. Presumably, this evidence would be relevant to a related contention that had the witnesses been presented with a physical lineup within hours of the intrusion, when the recollection of the witnesses was arguably freshest, they would not have identified defendant as the perpetrator. At the time of trial, Officer Schehr testified that four days after the home

invasion, defendant was asked to participate in a physical lineup, but he refused. As a result, a photo array was prepared and presented to the complainants. Defendant has not asserted that he would have cooperated in a physical lineup had he been asked four days earlier, nor has he presented anything to support his claim that a four-day delay compromised the witnesses' ability to identify him. Defendant has not overcome the presumption that trial counsel may have elected not to press the issue of the timing of the photo array as a matter of trial strategy because it would have highlighted defendant's refusal to cooperate in a physical lineup. Under these circumstances, defendant has not established that counsel's failure to aggressively cross-examine the officers regarding why a physical lineup was not performed on the day defendant was apprehended constituted deficient performance.

Defendant also seems to take issue with trial counsel's failure to effectively cross-examine a police officer regarding the use of the tracking dog. Specifically, defendant contends that the officer should have been cross-examined regarding the failure to bring the tracking dog to the scene of defendant's apprehension so that the dog could confirm (or fail to confirm) defendant's identity. Defendant's trial counsel did cross-examine the canine handler regarding the procedures used in the tracking. He then queried during closing arguments why the officer only introduced the dog to scents on the porch rather than taking the dog into the house where, counsel argued, the intruder's scent would have been stronger. Presumably, trial counsel was suggesting that had the canine been properly introduced to a stronger scent, the dog would have successfully tracked the true intruder. As a matter of trial strategy, defendant's counsel could reasonably have determined that discrediting the canine officer's testimony in this manner, as opposed to the manner suggested by defendant, would be effective. Thus, defendant has failed to overcome the strong presumption that counsel's actions were sound trial strategy.

Defendant also contends that trial counsel's performance was deficient because he failed to adequately explain to the jury why defendant ran away from the police at the time he was spotted at the bus stop. However, counsel elicited defendant's testimony on direct examination that defendant ran away because he was afraid of police brutality. Thus, there is no factual support for defendant's claimed error. A defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Next, defendant argues that trial counsel was ineffective when he failed to object to the use of a Japanese interpreter during the testimony of the complainant, Nobuko Sakaguchi. Defendant fails to explain why the use of an interpreter was improper or how he was prejudiced in this regard. A defendant cannot simply announce a position or claim error and "then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Waclawski*, 286 Mich App 634, 679; 780 NW2d 321 (2009).

For his final claim, defendant argues that he was deprived of the effective assistance of counsel because his counsel allegedly failed to convey a plea offer made before trial. However, defendant has provided no evidence that any plea offer was made or what the terms of that offer included. Defendant has failed to establish the factual predicate for this claim of error. *Hoag*, 460 Mich at 6. Because defendant has not demonstrated that the prosecution made a plea offer, he cannot show that his counsel was ineffective in failing to inform him of it.

After reviewing the existing record, we conclude that defendant has failed to establish that trial counsel's performance fell below an objective standard of reasonableness. Moreover, even if there had been some deficient performance, there is no "reasonable probability" that, but for these errors, the result of the proceeding would have been different. *People v Toma*, 462 Mich 281, 302-303; 613 NW2d 694 (2000). Two eye-witnesses identified defendant as the intruder. When defendant was apprehended, he had in his possession tools commonly associated with home invasions. More significantly, he had in his possession the keys that were missing from the complainants' home. The jury was free to reject defendant's explanation—that he was simply attempting to return keys he had found in the street—as implausible. Defendant has not, on the existing record, demonstrated a reasonable probability that, but for counsel's alleged errors, the result of the trial would have been different. *Id.*

## II. 180-DAY RULE

Next, defendant argues that the charge should have been dismissed because of a violation of the 180-day rule in MCL 780.131(1). After defendant was apprehended, he was incarcerated on a parole violation hold. Defendant appears to be arguing that this incarceration status triggered the application of the 180-day rule. The 180-day rule governs procedures that must be followed when criminal charges are brought against a defendant incarcerated in a state correctional facility. *People v Lown*, 488 Mich 242, 254; 794 NW2d 9 (2011). The 180-day rule is set forth in MCL 780.131(1), which provides:

> Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison sentence might be imposed upon conviction, the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information or complaint.

Thus, if the prosecutor fails to commence an action within 180 days after receiving notice from the Department of Corrections, the trial court is divested of jurisdiction and the case must be dismissed with prejudice. MCL 780.133.

In *People v Rivera*, 301 Mich App 188, 192; 835 NW2d 464 (2013), this Court held that "[t]he clear language of MCL 780.131(1) provides that MDOC must send written notice, by certified mail, *to the prosecutor* to trigger the 180-day requirement." In this case, defendant has not alleged nor provided any evidence that the Department of Corrections delivered to the prosecuting attorney written notice of defendant's incarceration and a request for final disposition of the warrant. Furthermore, even assuming that notice was sent, defendant still cannot establish a violation of the 180-day rule. The Department of Corrections could not have sent notice to the prosecuting attorney before March 13, 2013, which was the date the complaint and warrant were issued in this case. Defendant's trial began on September 3, 2013. Because defendant was brought to trial within 180 days of March 13, 2013, there is no basis for finding that the 180-day rule was violated.

## III. DELAY IN ARRAIGNMENT

Defendant also asserts that a delay in his arraignment deprived him of due process. Because this claim of constitutional error was never raised at the trial court, we review this unpreserved issue for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-765; 597 NW2d 130 (1999). Although the record is vague, it appears that after defendant was apprehended on January 13, 2013, he was incarcerated on a parole violation. The complaint and warrant for the home invasion charges were issued on March 13, 2013. The prosecutor sought to writ defendant from the Charles Egeler Correctional Facility on March 14, 2013, but this was not effectuated until May 2, 2013, when defendant was arraigned in district court. Defendant has not demonstrated that the delay in his arraignment constituted outcome-determinative plain error.

It is axiomatic that upon an arrest, an individual must be brought before a magistrate for arraignment "without unnecessary delay." MCL 764.26; *People v Cain*, 299 Mich App 27, 48; 829 NW2d 37 (2012), aff'd in part, vacated in part on other grounds 495 Mich 874 (2013). When an individual is arrested *without a warrant*, a prompt arraignment is imperative because it provides a judicial determination of probable cause. *People v Mallory*, 421 Mich 229, 239; 365 NW2d 673 (1984). A delay of more than 48 hours has been found presumptively unreasonable unless there are extraordinary circumstances. *Cain*, 299 Mich App at 49. In this case, however, defendant was arrested pursuant to a warrant. And more importantly, while an unreasonable delay in an arraignment may warrant suppression of evidence obtained as a result of the delay, dismissal of the charges is not employed as an appropriate remedy. *Id.*

Defendant has failed to demonstrate that he is entitled to any relief as a result of the delay in his arraignment. There clearly was more than a two-day delay in defendant's arraignment after the issuance of the warrant for his arrest on the home invasion charge. However, the proper remedy for this delay is the suppression of any evidence procured as a result of this delay. Defendant has not identified any such evidence. Moreover, the trial record discloses that all of the crucial evidence was obtained on the day defendant was apprehended. Defendant was found at that time with the keys to the complainants' home and tools associated with home invasions. Further, defendant's statement was taken that same day. Defendant has not cited any evidence that was procured as a direct result of the delay. Thus, there is no evidence to suppress. Consequently, defendant has not demonstrated outcome-determinative plain error.

## IV. SENTENCING

Defendant also raises in his Standard 4 brief a sentencing issue, but his argument is largely incoherent. Defendant appears to be arguing that he was sentenced for an offense categorized in a class higher than that of which he was actually convicted. If indeed this is defendant's argument, it is premised on a misunderstanding of the abbreviations used in the Register of Actions and charging documents. Defendant references the following phrase that appears in many of the documents: "Sentencing Guideline Category Person B." He then states, "Although 14 was scoring all previous scores the category was F the worst across board." Defendant seems to suggest that he was charged as a "Category B" but was sentenced at an elevated "Category F." However, it is clear that defendant has misunderstood the documents. The reference to "category Person B" simply is a notation that defendant was convicted of an

offense that is categorized as a "crime against a person" and as a Class B offense for purposes of the sentencing guidelines. See MCL 777.16f. The "F" that defendant notes, in the context of "COUNT 1 C/M/F: F 750110A2," is simply the abbreviation for "felony," as opposed to "C" for "civil infraction" or "M" for "misdemeanor"—it has no bearing on which sentencing grid is to be used. Moreover, the original and amended judgments of sentence, and the sentencing information report, all accurately indicate that defendant was convicted of and sentenced for first-degree home invasion as a Class B offense. There is no support for any argument that defendant was sentenced based on an offense higher than the one of which he was convicted. Further, we note that defendant, through appointed appellate counsel, successfully pursued a remand to the trial court where his motion for resentencing was granted, corrections were made to the scoring of the guidelines, and defendant's minimum sentence was thereafter reduced by three years.

Affirmed.

/s/ Pat M. Donofrio
/s/ Michael J. Riordan
/s/ Michael F. Gadola