# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

CHARLES JACOB SIMKINS,

      Defendant-Appellant.

UNPUBLISHED
March 21, 2017

No. 329561
Oakland Circuit Court
LC No. 2014-251044-FC

Before: TALBOT, C.J., and MURRAY and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his convictions, after a jury trial, of voluntary manslaughter, MCL 750.321, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 48 months to 15 years' imprisonment for voluntary manslaughter and two years' imprisonment for felony-firearm. For the reasons set forth in this opinion, we affirm defendant's convictions, but remand to the trial court for resentencing.

## I. FACTS

This case arises from the shooting death of Edwin Criswell, which occurred following a confrontation with defendant in Criswell's yard. Although no one saw the shooting, several neighbors testified that they heard two males arguing loudly from the direction of Criswell's house and heard several loud noises that sounded like gunshots. Defendant and several neighbors called 911 to report the shooting, and the police responded to the scene. Defendant unloaded his .9mm Glock and left it sitting on the hood of his truck with his identification before the police arrived. Defendant was still on the phone with the 911 operator when the police arrived, but identified himself as the shooter, and the police took him into custody. Criswell lost a significant amount of blood by the time emergency responders arrived, and was dead upon arrival to the hospital.

At trial, several police officers testified that when they responded to the shooting defendant was yelling for help, complied with police demands, identified himself as the shooter, had blood on his hands and clothing, did not complain of any injuries, and did not have any visible injuries aside from a cut on his hand. According to the police, defendant admitted to a physical altercation with Criswell, but asserted he shot Criswell in self-defense. Doctor Kane Virani, the medical examiner, testified that Criswell suffered numerous injuries in addition to the

two gunshot wounds to his left thigh, that the injuries were likely from a struggle rather than from a fall, and that the placement of the gunshot wounds indicated that the gun was behind Criswell when it was fired. Several forensic scientists testified that the blood found on defendant's shirt matched Criswell's and that the shell casings found at the scene matched defendant's .9mm Glock.

Defense counsel asserted defendant shot Criswell in self-defense. Defendant did not testify at trial, but both defendant's 911 calls and the in-car video from when the police transported defendant to the police station were played for the jury. In the tapes, defendant urged help to arrive quickly, expressed concern for Criswell, and asserted he acted in self-defense after a physical confrontation with Criswell. Defense counsel also pointed to numerous alleged flaws in the police investigation into the shooting. However, the jury nonetheless found defendant guilty of voluntary manslaughter and felony-firearm.

## II. ANALYSIS

Defendant argues the prosecutor violated his Fifth Amendment right not to testify when, in rebuttal, the prosecutor stated "Two eyewitnesses, one dead, Mr. Criswell didn't get an opportunity to testify and tell you what happened."

To preserve an issue of prosecutorial error,[1] a defendant must contemporaneously object and request a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). A curative instruction is usually sufficient to cure the prejudicial effect of an improper prosecutorial comment. *People v Cain*, 299 Mich App 27, 36; 829 NW2d 37 (2012), vacated in part on other grounds by 495 Mich 874 (2013). Thus, if defense counsel failed to object, review is foreclosed unless the prejudicial effect of the remark was so great that it could not have been cured by an appropriate instruction. *People v Williams*, 265 Mich App 68, 70-71; 692 NW2d 722 (2005), aff'd 475 Mich 101 (2006). Here, defense counsel did not object to the prosecutor's statement he now asserts was improper, nor did he make a request for a curative instruction. Thus, this issue is not preserved for appeal.

When there was no contemporaneous objection and request for a curative instruction, appellate review of claims of prosecutorial error is limited to ascertaining whether there was

---

[1] Although this type of claim is generally referred to as "prosecutorial misconduct," this Court has stated that, "the term 'misconduct' is more appropriately applied to those extreme . . . instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct," but that claims "premised on the contention that the prosecutor made a technical or inadvertent error at trial" are "more fairly presented as claims of 'prosecutorial error.' " *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015) (citation omitted). Nevertheless, regardless of "what operative phrase is used, [this Court] must look to see whether the prosecutor committed errors during the course of trial that deprived defendant of a fair and impartial trial." *Id.*, citing *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001). Here, we will refer to defendant's claim as prosecutorial error, as the argument is limited to technical errors by the prosecutor.

plain error that affected substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). Reversal is warranted only when plain error resulted in the conviction of an innocent person, or seriously affected the fairness, integrity, or reputation of the proceedings. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

Due to the prosecutor's duty "to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dubik*, 274 Mich App 58, 63; 732 NW2d 546 (2007), citing *People v Jones*, 468 Mich 345, 354; 662 NW2d 376 (2003), and *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). Prosecutorial error issues are decided on a case by case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010).

"The Fifth Amendment and Const 1963, art 1, § 17 provide that no person shall be compelled to be a witness against himself in a criminal trial." *People v Scholar*, 194 Mich App 158, 164; 486 NW2d 312 (1992). Accordingly, a criminal defendant has "a right to remain silent at trial," *People v Blog*, 56 Mich App 624, 629; 224 NW2d 725 (1974), "and may elect to rely on the 'presumption of innocence,' " *People v Fields*, 450 Mich 94, 108; 538 NW2d 356 (1995). Because all defendants are presumed innocent until proven guilty, a prosecutor "may never shift its burden to prove that defendant is guilty beyond a reasonable doubt and obligate the defendant to prove his innocence." *People v Rosales*, 160 Mich App 304, 312; 408 NW2d 140 (1987). Similarly, a defendant's "neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect." MCL 600.2159. Thus, " 'the Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence [at trial] or instructions by the court that such silence is evidence of guilt.' " *People v Clary*, 494 Mich 260, 265; 833 NW2d 308 (2013), quoting *Griffin v California*, 380 US 609, 615; 85 S Ct 1229; 14 L Ed 2d 106 (1965). However, it is not improper for the prosecution to state generally that the evidence was uncontroverted, even when only the defendant could have contradicted the evidence. See *Fields*, 450 Mich at 115; *People v Godbold*, 230 Mich App 508, 521; 585 NW2d 13 (1998); *People v Guenther*, 188 Mich App 174, 177-178; 469 NW2d 59 (1991).

Defendant asserts that during rebuttal the prosecutor made improper reference to his failure to testify when the prosecutor stated, "Two eyewitnesses, one person dead, Mr. Criswell didn't get an opportunity to testify and tell you what happened." However, that statement only mentioned Criswell's inability to testify, and was part of a more extensive argument. Indeed, in the next breath, the prosecutor stated, "One witness did tell you that he was not in imminent danger of death or great bodily harm. What he told you was I beat him up and I thought well he's going into the house to get – I didn't know what he had. That's what [defendant] said." The crux of these statements was that there were only two eyewitnesses to the shooting and that even what the jury heard directly from defendant—the only living eyewitness—did not support defendant's theory of self-defense. Thus, the prosecutor's comment did not highlight defendant's failure to testify and instead actually drew the jury's attention to defendant's own statements.

Further, the prosecutor's comment was not predicated on pointing out the "unrefuted" nature of evidence that only defendant could refute. Rather, the comment was merely responding to defense counsel's repeated assertion that the jury could not find defendant guilty of the charges because the prosecutor did not present any eyewitness who could tell the jury exactly what had occurred during the altercation. Thus, when considered in context, it is clear that the prosecutor's statement did not directly reference defendant's failure to testify, and was made in direct response to the theory of defense counsel.[2]

Defendant also argues he was deprived of a fair trial and of the right to present a defense when the trial court denied the admission of testimony from an expert in Post-Traumatic Stress Disorder (PTSD), and when the prosecution failed to test all of the blood and other physical evidence found at the scene.

To preserve the issue that defendant was denied the right to present a defense, "a party must object below and specify the same ground for objection that it argues on appeal." *People v Bosca*, 310 Mich App 1, 46; 871 NW2d 307, app held in abeyance 872 NW2d 492 (2015), citing *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defendant failed to object to the trial court's decision to exclude the expert's testimony on the ground that it would violate his right to present a defense. Similarly, while defendant raised this issue in his post-sentencing motion for new trial, defendant failed to object at trial to the prosecutor's failure to test all of the physical evidence on that basis. Therefore, the issue is not preserved.

This Court reviews a trial court's decision to admit or exclude expert testimony for an abuse of discretion. *People v Beckley*, 434 Mich 691, 713; 456 NW2d 391 (1990); *People v Wilson*, 194 Mich App 599, 602; 487 NW2d 822 (1992). "Whether a defendant was deprived of his constitutional right to present a defense is reviewed de novo." *Bosca*, 310 Mich App at 47. This Court reviews unpreserved constitutional issues for plain error affecting a defendant's substantial rights. *Id.*, citing *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). "An error is plain if it is clear or obvious," and "[a]n error affected a defendant's substantial rights if it affected the outcome of the lower court proceedings." *Id.*

"A criminal defendant has a state and federal constitutional right to present a defense." *People v Kerr*, 253 Mich App 317, 326; 654 NW2d 651 (2002). "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense." *People v Kowalski*, 492 Mich 106, 139; 821 NW2d 14 (2012). However, the

---

[2] Even if this statement could be understood as commenting on defendant's failure to testify or as an attempt to shift the burden of proof to defendant, reversal is not required because the statement was not outcome determinative. The prosecutor's statement in rebuttal was isolated and brief. Additionally, the trial court instructed the jury that defendant is presumed innocent, that "defendant is not required to prove his innocence," and that "Every defendant has the absolute right not to testify. When you decide the case you must not consider the fact that he did not testify. It must not affect your verdict in any way." "[J]urors are presumed to follow their instructions." *Unger*, 278 Mich App at 235. Therefore, even if the prosecutor's statement was improper, it was not outcome determinative and reversal is not required. *Id.* at 237.

right to present a defense is not an unconditional right and a defendant must still conform to the "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Kowalski*, 492 Mich at 139, quoting *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984).

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Self-defense is lawful when the defendant honestly and reasonably believes that he was in danger of imminent death or serious bodily injury. *People v Guajardo*, 300 Mich App 26, 35-36; 832 NW2d 409 (2013). Thus, "[a] defendant's history and psychological makeup may be relevant to explain the reasonableness of a defendant's belief that he or she was in inescapable danger." *People v Orlewicz*, 293 Mich App 96, 102; 809 NW2d 194 (2011), remanded on other grounds by 493 Mich 916 (2012). However, where the defendant's trial merely "featured two starkly contrasting, and largely incompatible narratives of what factually transpired before the killing," and the defendant's self-defense claim depended solely on which of the two factual scenarios actually occurred, psychiatric testimony is not relevant if it "would have cast no light whatsoever on which of the two versions of events was the more likely." *Id.* at 103. Further, even if relevant, to be admissible the proposed expert testimony must also be helpful to the jury. *People v Christel*, 449 Mich 578, 592; 537 NW2d 194 (1995); MRE 702.

Defendant argues that Doctor Roger Pittman's testimony regarding defendant's PTSD would have assisted the jury in determining that defendant honestly and reasonably believed he needed to act in self-defense at the time of the shootings. However, as in *Orlewicz*, the evidence presented at defendant's trial featured two conflicting factual scenarios of what occurred before the shooting. The prosecution's theory was that defendant was the aggressor and attacked Criswell after he found his dog in Criswell's yard and that he shot Criswell even though defendant had the upper hand in the altercation and Criswell was fleeing at the time of the shooting. Defendant's theory was that Criswell was inebriated and combative when defendant knocked on his door in search of his dog, and that defendant only shot Criswell in self-defense when Criswell had cornered defendant near his garage on the ground.

Under the prosecution's theory, there was no possible way defendant could have had a reasonable and honest fear that he was in imminent danger, and under the defendant's theory, defendant could have honestly and reasonably feared for his life. Thus, as in *Orlewicz*, defendant's self-defense claim depended solely on which of the two factual scenarios the jury believed. Doctor Pittman's testimony that defendant suffered from PTSD and that veterans with PTSD "may, under certain circumstances, assume a 'survival mode' in which they believe, regardless of the actual reality, that it is necessary to use force for self-protection" and "view the threat and danger posed by the other person to be far greater than is actually the case," "would have cast no light whatsoever on which of the two versions of events was the more likely."

-5-

*Orlewicz*, 293 Mich App at 103. Accordingly, the trial court did not err in concluding that Doctor Pittman's proposed testimony regarding PTSD was not relevant.[3]

Due process requires that a criminal defendant have "a meaningful opportunity to present a complete defense," which includes a defendant's right to receive exculpatory evidence from the prosecution. *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006). To safeguard this right, "[d]ue process requires the prosecution to disclose evidence in its possession that is exculpatory and material, regardless of whether the defendant requests the disclosure." *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007), citing *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Further, a defendant can show that the police's failure to preserve even potentially exculpatory evidence violated his right to due process if the police acted in bad faith. *Bosca*, 310 Mich App at 27, citing *Arizona v Youngblood*, 488 US 51, 57; 109 S Ct 333; 102 L Ed 2d 281 (1988).

Here, defendant does not assert that the police suppressed exculpatory evidence, nor does he argue that they failed to preserve possibly exculpatory evidence.[4] Instead, defendant argues the prosecution violated his right to present a complete defense by simply failing to test all of the evidence found at the scene of the shooting. However, "[f]or due process concerns, there is a crucial distinction between failing to disclose evidence that has been developed and failing to develop evidence in the first instance," *Anstey*, 476 Mich at 461, and "[a]bsent a showing of suppression of evidence, intentional misconduct, or bad faith, the prosecutor and the police are not required to test evidence to accord a defendant due process," *People v Coy*, 258 Mich App 1, 21; 669 NW2d 831 (2003). "Nor does due process require that the prosecution seek and find exculpatory evidence." *Id*. Thus, defendant's right to present a defense is not violated where the police or prosecution do not test every piece of evidence found at the scene of the crime, "because the police have no constitutional duty to assist a defendant in developing potentially exculpatory evidence." *Id*. at 461.

Defendant was free to—and did—argue to the jury that further investigation or testing of evidence might have supported defendant's self-defense claim, but the prosecution did not have a constitutional duty to perform particular tests on the evidence or test specific pieces of evidence. Because neither the prosecutor nor the police owed defendant a constitutional duty to test or develop potentially favorable evidence, defendant cannot show that any failure by the police and prosecutor to test certain evidence[5] amounted to a plain error that deprived him of his right to present a defense. *Antsey*, 476 Mich at 461-462.

---

[3] Moreover, to the extent Doctor Pittman would have testified that defendant's conduct during the altercation resulted from PTSD, his testimony would have been inadmissible. See *Christel*, 449 Mich at 591.

[4] Furthermore, even if the *Youngblood* test applied, defendant makes no allegations of bad faith.

[5] Moreover, when the prosecution failed to test all of the physical evidence found at the scene, defendant could still have tested all of the blood and clothing before trial as MCR 6.201(A)(6)

Next, defendant argues he is entitled to the correction of his Presentence Investigation Report (PSIR). A defendant may not challenge on appeal the accuracy of information relied upon in determining a sentence that was within the appropriate guidelines range unless he raised the issue at sentencing, in a motion for resentencing, or in a motion to remand filed in this Court. MCL 769.34(10); MCR 6.429(C); *People v Lloyd*, 284 Mich App 703, 706; 774 NW2d 347 (2009). While defendant raised this issue in his post-sentencing motion for new trial, defendant did not present the argument that he now raises on appeal at his sentencing, in a motion for resentencing, or in a motion to remand. Accordingly, this argument is at best, unpreserved. However, defendant waived this issue for appellate review because defense counsel verbally assented to the accuracy of the PSIR at sentencing. *People v Carter*, 462 Mich 206, 208-209, 213-214; 612 NW2d 144 (2000).

Defendant argues he is entitled to resentencing under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

To preserve a challenge to the scoring of OVs premised on judicial fact-finding, a defendant is required to object at sentencing to the scoring of the OVs on that basis. *Lockridge*, 498 Mich at 392-393. Defendant did not raise any objections on this ground at his sentencing. Therefore this issue is not preserved. This Court reviews unpreserved *Lockridge* challenges for plain error affecting a defendant's substantial rights. *Lockridge*, 498 Mich at 392.

In *Lockridge*, our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient to the extent that "the guidelines require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that mandatorily increase the floor of the guidelines minimum sentence range." *Lockridge*, 498 Mich at 364. To remedy the constitutional violation, the Court held that the sentencing guidelines are advisory only. *Id*. at 391. However, after *Lockridge*, sentencing courts are still required to "continue to consult the applicable guidelines range and take it into account when imposing a sentence," and sentencing courts are permitted to score the OVs using judicially-found facts. *Id*. at 392 n 28. Thus, a defendant sentenced post-*Lockridge* is not entitled to resentencing if the sentencing court engaged in judicial fact-finding to score the OVs. Instead, to be entitled to relief under *Lockridge*, a defendant must demonstrate, in part, that his minimum sentence guideline range was actually constrained by the violation of the Sixth Amendment. *Lockridge*, 498 Mich at 395.

Here, the sentencing judge did not commit a constitutional violation when he used judicial fact-finding to score defendant's OVs. Defendant was sentenced on August 25, 2015, after *Lockridge* was decided when the sentencing guidelines were advisory only. While the sentencing judge scored at least OV 5 on the basis of judicially-found facts, the court also explicitly acknowledged that the sentencing guidelines range was only advisory and found the "guidelines are reasonably scored under the circumstances of this case." Because the sentencing guidelines were merely advisory, the judicial fact-finding to score the OVs did not *compel* the court to give defendant a specific sentence. Instead, the sentencing judge scored the OVs and

---

provides that a trial court "may order that a party be given the opportunity to test without destruction any tangible physical evidence."

used those guidelines as an advisory range, thereby conforming to the holding of *Lockridge*. As a result, defendant cannot show that an "unconstitutional constraint on judicial discretion actually impaired his Sixth Amendment right," because the judge was not actually constrained by the sentencing guidelines. *Lockridge*, 498 Mich at 395.

Last, defendant argues he is entitled to resentencing as the trial court improperly assessed 15 points under OV 5.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438-439; 835 NW2d 340 (2013). Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which is reviewed de novo. *Id.* "[T]he proper interpretation and application of the statutory sentencing guidelines . . . which are both legal questions" are also reviewed de novo. *People v Francisco*, 474 Mich 82, 85; 711 NW2d 44 (2006).

"MCL 769.34(10) makes clear that the Legislature intended to have defendants sentenced according to accurately scored guidelines." *Francisco*, 474 Mich at 88. Thus, "a defendant is entitled to resentencing when the trial court erred in scoring an offense variable, and the error affected the statutory sentencing guidelines range." *People v Jackson*, 487 Mich 783, 793; 790 NW2d 340 (2010).

OV 5 must be scored at 15 points if "[s]erious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(a). MCL 777.35(2) directs 15 points be scored "if the serious psychological injury to the victim's family may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." Evidence of psychological injuries may include evidence of things like psychological effects, feelings of being hurt or violated. *People v Gibbs*, 299 Mich App 473, 493; 830 NW2d 821 (2013).

At defendant's sentencing, defense counsel argued that 15 points was improperly assessed under OV 5 as nothing in the record indicated one of Criswell's family members suffered a serious psychological injury. To that end, the trial court took testimony from Vicki Adam, Criswell's fiancé, that indicated she had been in grief counseling since the shooting and had suffered the loss of her job, home, "finances, friends, some family, sleep, trust and peace" as a result of Criswell's death. Although defense counsel argued that a fiancé does not qualify as a 'family member' for purposes of OV 5, the trial court determined 15 points was appropriately assessed under OV 5 after finding "I think living together for eight years and being engaged meets the definition of family member. Therefore, I find Ms. Adams indeed a family member of the decedent."

"Victim's family" is not defined by OV 5. "The Court's responsibility in interpreting a statute is to determine and give effect to the Legislature's intent," *People v Lowe*, 484 Mich 718, 721; 773 NW2d 1 (2009), and this Court must give "plain meaning to the words actually used" in the statute, *People v Williams*, 491 Mich 164, 175; 814 NW2d 270 (2012). If the statute defines a term, that definition controls. *People v Schultz*, 246 Mich App 695, 703; 635 NW2d 491 (2001). However, when a statute fails to define a term, like here, this Court presumes "that the

Legislature intended for the words to have their ordinary meaning." *Hardy*, 494 Mich at 440. "[W]hen terms are not expressly defined by a statute, a court may consult dictionary definitions." *People v Denio*, 454 Mich 691, 699; 564 NW2d 13 (1997).

While the statute does not define "victim's family," this Court has previously discussed the definition of "victim's family" in relation to OV 5. In *People v Davis*, 300 Mich App 502, 511; 834 NW2d 897 (2013), abrogated on other grounds by *People v Rhodes (On Remand)*, 305 Mich App 85; 849 NW2d 417 (2014), this Court concluded that 'family' is generally defined as " '[a] group of persons connected by blood, by affinity, or by law, esp. within two or three generations,' " and "include[s] parents and their children, a person's spouse and children, or any group of people closely related by blood." *Davis*, 300 Mich App at 511, quoting Black's Law Dictionary (9th ed) and Random House Webster's College Dictionary (2001).

Utilizing a broad definition of the word 'family' in relation to OV 5 is consistent with the statute, because, as the *Davis* Court noted, "[i]f the Legislature intended to narrowly define 'family' in the context of OV 5 to include only those people having a blood connection *and* a legally recognized relationship, it could have done so by adding the word 'legal' before the word 'family,' " but "nothing in the language of the statute limits the term 'family' to people with whom one has a legal relationship." *Davis*, 300 Mich App at 512. However, we conclude that Adams does not qualify as Criswell's 'family' for purposes of OV 5 under even a broad definition of the term, as she was not related to Criswell by blood, affinity, *or* law. Accordingly, the trial court clearly erred in assessing 15 points under OV 5.

Defendant received a total of 80 OV points, placing him in OV Level VI (75+ points) on the applicable sentencing grid with a guidelines range of 29 to 57 months. MCL 777.64. This guidelines range was based on the scoring of OVs 1, 2, 3, 5, and 6. Deducting the 15 points assessed under OV 5 would change defendant's applicable guidelines range, and put defendant in OV level V (50 to 74 points), with a guidelines range of 19 to 38 months. Thus, because the scoring error altered the minimum range calculated under the sentencing guidelines, defendant is entitled to resentencing. See *Francisco*, 474 Mich at 89-91.

Affirmed in part and remanded for resentencing. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Christopher M. Murray
/s/ Mark T. Boonstra