# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KENNETH WAYNE JENKINS,

Defendant-Appellant.

UNPUBLISHED
December 11, 2018

No. 337624
Wayne Circuit Court
LC No. 08-007823-01-FC

Before: M. J. KELLY, P.J., and METER and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of six counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), for which the trial court sentenced him as a second-offense habitual offender, MCL 769.10, to six consecutive prison terms of 25 to 75 years each. We affirm defendant's convictions but remand for further articulation regarding sentencing.

Defendant was convicted of sexually assaulting an 11-year-old girl in her Detroit home in 2008. The prosecution presented evidence that, in May 2008, defendant was dating the victim's mother, who left the victim and a three-year-old son in defendant's care while she attended Bible study. The victim had fallen asleep as they watched a movie and was awakened by defendant pulling down her pants. Defendant proceeded to digitally penetrate the victim's vagina at least three times, put his tongue in her vagina, digitally penetrate her buttocks, and, while attempting to repeatedly insert his penis into her vagina, put the tip of his penis between her labia. When the episode ended, the victim got dressed and ran outside, where she yelled for help until defendant dragged her back into the house. The victim later spoke to her mother on the telephone and urged her to hurry home. The victim disclosed the incident to her mother, reported the incident to the police, and went to a hospital where a sexual assault examination was performed. After charges were brought against defendant in 2008, he left the state and was not located until 2015. Forensic testing performed in 2015 revealed that defendant's DNA matched DNA recovered in 2008 from the victim's "panty liner." The prosecution also presented evidence that defendant had a prior conviction for second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a), for sexually assaulting a nine-year-old girl in 1996. At trial, the defense argued that the victim falsely accused defendant to orchestrate the breakup of him and her mother.

-1-

# I. OTHER-ACTS EVIDENCE

Defendant challenges the trial court's decision to allow the prosecutor to present evidence that defendant had previously sexually assaulted a nine-year-old girl in 1996, for which he was convicted of CSC-II. The evidence was admitted under MCL 768.27a(1), but defendant argues that it should have been excluded under MRE 403 because it was unduly prejudicial. We disagree. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013). "Preliminary questions of law . . . are reviewed de novo[.]" *Bynum*, 496 Mich at 623.

MCL 768.27a(1) provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence. MRE 401. A defendant's propensity to commit a particular type of crime makes it more probable that he committed such a crime when accused of doing so. *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012).

The charged offenses of CSC-I and defendant's prior conviction for CSC-II qualify as listed offenses against a minor. See MCL 768.27a(2). The prior conviction for CSC-II was relevant to defendant's propensity to commit the charged offenses of CSC-I and assisted the jury in weighing the victim's credibility. The defense sought to impugn the victim's credibility at trial, arguing that she falsely accused defendant because she wanted her mother and defendant to break up. Thus, the probative value of the other-acts evidence was high.

MRE 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Watkins*, 491 Mich at 481. MRE 403 is not, however, intended to preclude evidence merely because it is damaging to the opponent, because any relevant evidence will be damaging to some extent. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909, mod 450 Mich 1212 (1995). Instead, it "is only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded." *Id*. Unfair prejudice exists when there is "a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury" or "it would be inequitable to allow the proponent of the evidence to use it." *Id*. at 75-76 (quotation marks and citation omitted); see also *People v McGuffey*, 251 Mich App 155, 163; 649 NW2d 801 (2002). When applying MRE 403 to evidence in the context of MCL 768.27a, "courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487. Thus, "other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference." *Id*. Courts should consider the following factors when deciding whether to exclude other-acts evidence under MRE 403 as being overly prejudicial:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id*. at 487-488.]

When weighing the probative value of other-acts evidence, courts should consider the extent to which the other-acts evidence supports the victim's credibility and rebuts any defense attack on the victim's credibility. *Id*. at 491-492.

Defendant challenges the first factor from *Watkins*—similarity between the other act and the charged sexual assaults—by emphasizing that the prior offense involved CSC-II, and not CSC-I, and that the "other incident was not penetration, it was unlawful contact." Despite defendant's arguments, this factor clearly weighs in favor of admissibility. The prior conviction and the current offenses were " 'of the same general category' because they involve[d] sex crimes . . . against children." See *People v Duenaz*, 306 Mich App 85, 101; 854 NW2d 531 (2014) (citation omitted). In addition, defendant's prior victim and this victim were similar ages—9 and 11—when the charged sexual conduct occurred. Defendant also argues that the trial "court gave seemingly no consideration to the fact that the alleged prior event occurred 20 years earlier." However, the second factor addresses "the temporal proximity of the other acts *to the charged crime*," not the temporal divide as it related to defendant's 2016 trial. *Watkins*, 491 Mich at 487 (emphasis added). The previous offense occurred in 1996, the charged crimes occurred in 2008, and defendant was tried for the 2008 charged offenses in 2016. And even though the previous assault occurred approximately 12 years before the charged assaults, this temporal gap is not dispositive. MCL 768.27a does not contain a temporal limitation.[1] Further, defendant was imprisoned for the previous assault and the charged offenses occurred only four years after defendant was released from prison.

Defendant makes no specific arguments that other factors listed in *Watkins* rendered the other-acts evidence inadmissible under MRE 403. We note, however, that while some of these factors may conceivably weigh in favor of finding unfair prejudice, in total, given the highly probative value of the other-acts evidence, the probative value was *not* substantially outweighed by the danger of unfair prejudice. Moreover, in its final instructions, the trial court gave a cautionary instruction to the jury concerning the proper use of the evidence, thereby limiting any potential for unfair prejudice. The trial court did not abuse its discretion by admitting the other-acts evidence.[2]

---

[1] In addition, when discussing MCL 768.27a, this Court has stated that "[t]he remoteness of the other act affects the weight of the evidence rather than its admissibility." *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011).

[2] Within this issue, defendant argues that the trial court did not analyze any of the factors from *Watkins* before admitting the other-acts evidence. It is apparent that the trial court recognized its duty to weigh the probative value of defendant's prior sexual assault against the potential for unfair prejudice and determined that the record before it provided no reason to exclude the evidence. At the hearing on the prosecutor's motion, the court heard the prosecutor's arguments in which she discussed several of the *Watkins* factors that supported admitting the evidence. When the court asked for defense counsel's response, he did not discuss or challenge any of the *Watkins* factors raised by the prosecutor. Instead, he focused on the "constitutionality and/or the historic precedent that these kind of cases set" and requested "an on the record and/or affidavit . . . under oath" to establish the facts of the prior conviction before the trial court compared the two cases. The trial court responded to defense counsel's specific request and also addressed the prejudicial nature of the evidence. Moreover, the trial court clearly agreed with the prosecutor's analysis of the *Watkins* factors, stating that the prosecutor "has established, in this case, grounds for the Court granting the motion." Therefore, we reject defendant's suggestion that the trial court erred by failing to specifically discuss the factors from *Watkins* before permitting the other-acts evidence.

## II. PROSECUTOR'S CONDUCT

Defendant next argues that the prosecutor denied him a fair trial by improperly vouching for the victim's truthfulness and by denigrating defense counsel in closing and rebuttal arguments. We disagree. As defendant acknowledges, he did not object to the prosecutor's remarks at trial, leaving this issue unpreserved. We review an unpreserved claim of prosecutorial error for plain error affecting defendant's substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). We will not reverse if the alleged prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

### A. IMPROPER VOUCHING

Defendant complains that the prosecutor improperly vouched for the victim's truthfulness when she argued that the victim had "no reason to lie." A prosecutor may not vouch for the credibility of a witness by conveying that she has some special knowledge that the witness is testifying truthfully. *People v Knapp*, 244 Mich App 361, 382; 624 NW2d 227 (2001). However, prosecutors have great latitude when arguing at trial, *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010), and may argue from the facts in evidence that a witness is worthy of belief, *People v Cain*, 299 Mich App 27, 36; 829 NW2d 37 (2012), vacated in part on other grounds 495 Mich 874 (2013). "The crucial inquiry is not whether the prosecutor said 'We know' or 'I know' or 'I believe,' but rather whether the prosecutor was attempting to vouch for the defendant's guilt." *People v Reed*, 449 Mich 375, 399; 535 NW2d 496 (1995).

The prosecutor did not suggest that she had some special knowledge that the victim was credible. Viewed in context, the prosecutor was arguing that, objectively, the victim was unlikely to have fabricated a story to implicate defendant in a crime and subject herself to the medical testing associated with making such a claim. The prosecutor mentioned that it was unlikely that, if the claim were fabricated, the victim would have gone to the extent of running outside and screaming such that a witness heard her. The prosecutor urged the jury to evaluate the evidence, discussed the reliability of the victim's testimony, and argued that there were reasons from the evidence to conclude that she was credible. Further, similar to the *Cain* case, it was the defense theory that a prosecution witness was not credible[3] and the prosecutor was permitted to respond that the witness had no motive to lie. See *Cain*, 299 Mich App at 37.[4] There is no basis for reversal.

### B. DENIGRATION OF DEFENSE COUNSEL

In arguing that the prosecutor denigrated defense counsel, defendant focuses on the prosecutor's use of the terms "ludicrous" and "ridiculous" during closing and rebuttal arguments. A prosecutor may not personally attack the credibility of defense counsel, *People v McLaughlin*,

---

[3] For example, in his opening statement, defense counsel stated that the evidence would show that after learning about her mother's pregnancy, the victim "was focused on . . . breaking up the relationship between her mother and [defendant]."

[4] Further, a timely objection to the challenged remarks could have cured any perceived prejudice by way of a cautionary instruction. See *Watson*, 245 Mich App at 586.

258 Mich App 635, 646; 672 NW2d 860 (2003), or suggest that defense counsel is intentionally attempting to mislead the jury, *Watson*, 245 Mich App at 592. However, a prosecutor may fairly respond to an issue raised by defense counsel, see, e.g., *People v Dobek*, 274 Mich App 58, 67; 732 NW2d 546 (2007), and need not use "the blandest possible" language, *id*. at 66.

Viewed in context, the prosecutor's remarks did not involve a personal attack on defense counsel's credibility or suggest that counsel was intentionally attempting to mislead the jury, but fairly responded to defense counsel's arguments. The prosecutor's use of the terms "ridiculous" and "ludicrous" were comments on the plausibility of defense counsel's theories that the victim falsely accused defendant only to break up his relationship with her mother and that defendant's DNA had been innocently transferred to the panty liner. The prosecutor gave reasons, grounded in the evidence, for why the jury should reject these theories. Thus, the comments were not a personal attack on defense counsel, but a commentary on the implausibility of the defense theories in light of the evidence presented at trial. The mere use of the challenged language did not make the arguments improper. Defendant also argues that the prosecutor "sarcastically and mockingly comment[ed] about a Martian did it." Defendant ignores, however, that defense counsel was the first person to reference a Martian when, in his opening statement, he stated that "if it was false, it got written down [by the doctor], if it was nonsensical such as a martian came down and did something to the child, it gets written down, but that's not necessarily truthful information." The prosecutor was simply responding to defense counsel's remark made in opening statement. In sum, viewed in context, the prosecutor's arguments were not improper.

Moreover, the trial court's instructions that the lawyers' statements and arguments are not evidence, that the jury was to decide the case based only on the evidence, and that the jury was to follow the court's instructions were sufficient to protect defendant's substantial rights. See, generally, *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). Consequently, this unpreserved claim does not warrant appellate relief.

## III. SENTENCING

In his last claim, defendant argues that his six consecutive 25-year prison terms violate the principle of proportionality because the trial court effectively elected to sentence him to a minimum of 150 years, which is equivalent to a life sentence, despite the fact that he has only one prior felony and one prior misdemeanor, and is "[c]ertainly not in the category of being one of the worst offenders[.]" We review the trial court's decision to impose discretionary consecutive sentences for an abuse of discretion. *People v Norfleet*, 317 Mich App 649, 654; 897 NW2d 195 (2016).

"In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (citation and quotation marks omitted). Defendant acknowledges that MCL 750.520b(3) authorized the trial court to impose consecutive sentences, but argues that his combined sentences are disproportionate under the circumstances of this case. The principle of proportionality " 'requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). However, when a defendant receives consecutive sentences, each sentence is to be reviewed *individually* for proportionality purposes. *Id*.; *Norfleet*, 317 Mich App at 663; *People v Miles*, 454 Mich 90, 95; 559 NW2d 299 (1997); *People v Mapp*, 224 Mich App 431, 435; 569 NW2d 523 (1997). In other words, "a proportionality challenge to a given sentence must be based on the individual term imposed and not on the cumulative effect of multiple sentences." *Norfleet*, 317 Mich App at 663. Accordingly, defendant's proportionality argument is inapt.

The pertinent question is whether the trial court's decision to impose consecutive sentences was outside the range of principled outcomes. *Id*. at 664-665. In *Norfleet*, the Court stated:

> a trial court may not impose multiple consecutive sentences as a single act of discretion nor explain them as such. The decision regarding each consecutive sentence is its own discretionary act and must be separately justified on the record . . . [R]equiring trial courts to justify each consecutive sentence imposed will help ensure that the 'strong medicine' of consecutive sentences is reserved for those situations in which so drastic a deviation from the norm is justified. [*Id*. at 664.]

The trial court here listed defendant's "ample chances to be a better human being" and his assaults against more than one child as justifications for its sentence, but it did not speak to each consecutive sentence individually. *Norfleet* therefore requires us to remand for further articulation so that we may properly review the consecutive nature of all the sentences. *Id*. at 666.

Defendant's convictions are affirmed but this case is remanded for further articulation regarding the sentences. We retain jurisdiction.


/s/ Michael J. Kelly
/s/ Patrick M. Meter
/s/ Colleen A. O'Brien

# Court of Appeals, State of Michigan

# ORDER

PEOPLE OF MI V  KENNETH WAYNE JENKINS

Docket No.    337624

LC No.        08-007823-01-FC

Michael J. Kelly
Presiding Judge

Patrick M. Meter

Colleen A. O'Brien
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court.  We retain jurisdiction.

Proceedings on remand in this matter shall commence within 35 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, the court shall further articulate the sentencing decisions.  The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

/s/ Michael J. Kelly

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

December 11, 2018
Date

Chief Clerk