*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANDRE ATRELEONEIL JONES,

Defendant-Appellant.

UNPUBLISHED
January 27, 2022

No. 351881
Oakland Circuit Court
LC No. 2018-266628-FC

Before: SAWYER, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317,[1] felon in possession of a firearm, MCL 750.224f(1), carrying a concealed weapon (CCW), MCL 750.227, and two counts of possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to concurrent prison terms of 562 months to 99 years for the murder conviction, and 47 to 90 months each for the felon-in-possession and CCW convictions, to be served consecutive to two two-year terms of imprisonment for the felony-firearm convictions. We affirm.

## I. FACTUAL OVERVIEW

Defendant's convictions arise from the fatal shooting of Carlton Eaton at a park in Pontiac on the morning of January 11, 2018. At trial, the prosecutor argued that defendant killed Eaton in an "execution-style" shooting, as an act of revenge on behalf of defendant's cousin. Witnesses testified that, in the hours preceding the shooting, defendant had been told that Eaton, who was in a relationship with defendant's cousin, had struck her, causing her face to be bruised and swollen. At one point, defendant stated, in front of witnesses, that he intended to "f up" Eaton. Subsequently, as defendant was walking with Justin Franklin, the sole eyewitness to the shooting, they encountered Eaton, whom both men knew. In response to defendant's inquiry, Eaton denied

---

[1] Defendant was charged with first-degree premeditated murder, MCL 750.316(1)(a), and the jury convicted him of the lesser offense of second-degree murder.

hitting defendant's cousin and called her a liar. After purchasing liquor, the three men walked to a park where they drank beer, smoked cigarettes, and talked. According to Franklin, during the one to two hours they were there, no one acted aggressively and he did not see anyone with a weapon.

Franklin testified that, at one point, he approached defendant and Eaton, who were standing face-to-face talking in a normal tone of voice, and indicated that he was ready to leave. Defendant and Eaton both indicated that they were not ready to leave yet, so Franklin turned to leave by himself. As soon as Franklin turned his back, he heard a gunshot. When Franklin turned around, he saw Eaton fall face first to the ground and saw defendant put a black .38 special handgun up his sleeve. Franklin ran, but stopped after defendant asked, "Where your bitch ass going?" Defendant was calm and said that "he shouldn't have done it." Franklin remained with defendant, stopping at a friend's house and going to eat, until they went to defendant's house where defendant fell asleep. After leaving defendant's house, Franklin immediately called 911 to report the shooting, voluntarily went to the police station and gave a statement, and offered to have his hands and clothing tested for gunpowder residue.

The medical examiner testified that the cause of death was one gunshot wound to the back of the head, and that the bullet was fired from approximately one to two inches away. An expert in firearms analysis testified that the bullet recovered from Eaton's head was consistent with being fired from four different types of handguns, including a .38 special caliber revolver.

At trial, the defense argued that defendant was not the shooter. The defense argued that Franklin, the only eyewitness, was not credible, and had accused defendant of shooting Eaton to protect himself from being suspected. In the alternative, the defense argued that the killing was not premediated, and therefore, the evidence was insufficient to prove first-degree premediated murder and "at most it's manslaughter."

## II. JURY INSTRUCTIONS

Defendant first argues that he was denied his constitutional right to a properly instructed jury because the verdict form did not provide the jury with the option of returning a general "not guilty" verdict for the first-degree premeditated murder count. An issue with a jury verdict form is considered an error in jury instructions. *People v Wade*, 283 Mich App 462, 467; 771 NW2d 447 (2009). Because defendant did not object to the trial court's jury instructions or the verdict form, this issue is unpreserved. We review this unpreserved claim of instructional error for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999). An error is plain if it is "clear or obvious." *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018). The defendant has the burden of establishing entitlement to relief under plain-error review. *Carines*, 460 Mich at 763.

## A. THE VERDICT FORM

Due process requires that the trial court "properly instruct the jury so that it may correctly and intelligently decide the case." *People v Clark*, 453 Mich 572, 583; 556 NW2d 820 (1996) (citations omitted). Defendant correctly observes that "a criminal defendant is deprived of his constitutional right to a jury trial when the jury is not given the opportunity to return a general

-2-

verdict of not guilty." *Wade*, 283 Mich App at 467. In *Wade*, the jury verdict form did not allow the jury to select a general "not guilty" verdict, the trial court's instructions and the jury foreperson's reading of the jury verdict form indicated that the jury was confused about its options in completing the jury verdict form, and the jury convicted the defendant of a lesser included offense. *Id*. at 465-468.

In this case, the verdict form provided the jury with the following options for the first-degree premeditated murder count:

You may return only one verdict on each count. Mark only one box for each count.

**Count One: Homicide – Murder First Degree – Premeditated**

□ Not Guilty

□ Guilty of Homicide – Murder First Degree – Premeditated

□ Guilty of the lesser offense of Second Degree Murder

□ Guilty of Voluntary Manslaughter

Contrary to what defendant asserts, the verdict form specifically gave the jury the option to select a general "Not Guilty" verdict for the first-degree premeditated murder charge. Similarly, the trial court instructed the jury that one of the available options for the first-degree premeditated murder charge was a verdict of "not guilty" and to "return only one verdict on each count." Because the record clearly establishes that the jury was given the opportunity to return a general verdict of not guilty, defendant's unpreserved challenge to the jury verdict form is without merit and does not warrant relief.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Alternatively, defendant argues that defense counsel was ineffective for failing to object to the jury verdict form and the related instructions. "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). Defendant preserved his claim of ineffective assistance of counsel by moving for a new trial or an evidentiary hearing in the trial court, and he also filed a motion to remand for a *Ginther*[2] hearing in this Court. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020); *Solloway*, 316 Mich App at 188. However, because the trial court denied defendant's request for an evidentiary hearing, and because this Court denied his motion to remand, review of this ineffective-assistance claim is limited to mistakes apparent on the record. *Id*. "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*. "A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

As previously explained, because the record clearly establishes that the jury was given the opportunity to return a general verdict of not guilty, defendant's challenge is without merit. In addition, given the trial court's denial of defendant's motion for a new trial on this basis, any objection by defense counsel in this regard would have been unsuccessful. Therefore, defense counsel's failure to object was not objectively unreasonable because any objection raised on this basis would have been meritless. Trial counsel cannot be deemed ineffective for failing to advocate a meritless position. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## III. PROSECUTOR'S CLOSING ARGUMENT

Next, defendant argues that the prosecutor engaged in misconduct by impermissibly vouching for the credibility of Franklin during closing argument. Again, we disagree. "In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). As defendant acknowledges, he did not object to the challenged conduct at trial. We review unpreserved claims of prosecutorial misconduct for plain error affecting defendant's substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). We will not reverse if the alleged prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

## A. PROSECUTOR'S REMARKS

Defendant challenges the following remarks made by the prosecutor during closing argument, and contends that the prosecutor improperly vouched for Franklin's truthfulness by arguing that he had no reason to lie:

> [Y]ou hear Justin [Franklin] under oath, he faces you, tells you what happened, looks you in the face. He's got no reason to lie, no reason to be deceptive. He comes and makes himself available to all of you and to this court.

A prosecutor may not vouch for the credibility of a witness by conveying that he or she has some special knowledge that the witness is testifying truthfully. *People v Knapp*, 244 Mich App 361, 382; 624 NW2d 227 (2001). However, prosecutors have great latitude when arguing at trial, *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010), and may fairly respond to an issue raised by the defendant. *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). They may argue the evidence and all reasonable inferences that arise from the evidence as it relates to their theory of the case, and they need not state their inferences in the blandest possible language. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). They may argue from the facts in evidence that a witness is worthy of belief. *People v Cain*, 299 Mich App 27, 36; 829 NW2d 37 (2012), vacated in part on other grounds 495 Mich 874 (2013).

The prosecutor did not refer to any special knowledge, beyond the evidence presented at trial, to argue that Franklin was truthful. Further, similar to *Cain*, it was the defense theory that Franklin, a prosecution witness, was not credible, and the prosecutor was permitted to respond that Franklin had no motive to lie. See *Cain*, 299 Mich App at 37. In other words, we agree with the trial court's decision when denying defendant's motion for a new trial on this basis that the challenged remarks were not improper, especially considering "defense counsel's unrelenting attack on the witness's credibility." For example, in opening statement, defense counsel stated: "You're going to be left in the end with more questions than answers, and a whole lot of doubt about the credibility or believability of one Justin Franklin, and on a murder case, that means not guilty." Counsel noted that the DNA found in the park belonged to Franklin, not defendant. Defense counsel cross-examined Franklin about his account of what occurred, elicited that Franklin had a prior conviction of uttering and publishing and committed previous acts involving violence, and asked questions implying that Franklin was the shooter. In closing argument, defense counsel reiterated and summarized the defense theory, arguing, *inter alia*, that there was no corroborating evidence that Franklin and defendant "were close as brothers," that the forensic evidence pointed only to Franklin being in the park with Eaton, that Franklin was the person who wanted to fight Eaton in the past, and that, because Franklin knew "his DNA was on file," he made himself an eyewitness to avoid suspicion. Defense counsel argued that while Franklin volunteered to have his hands tested for gunshot residue, he had an "unknown period of time" to wash his hands and to also change clothing. Defense counsel then stated:

> I want to talk about Justin Franklin. The prosecutor says he came in here, he was subject to cross-exam, he's from out of state, he doesn't have any reason to lie to you. What if he's the shooter? And you know your DNA's in the park, and you know all about gunshot residue, and DNA, and being on the Lions tape with the deceased and Andre Jones. Boy, I got to make myself the witness and call 911. But he sounds upset on that tape, the prosecutor says. Okay.

> Do you know what else you know about Justin Franklin? He is a liar. He is an individual who presents false things as true. His uttering and publishing conviction, it's not an overdrawn bank account, it is walking into a store, presenting a fake check and standing there calm and cool as if it is the truth to get money, and then leave, knowing at the time he did it that it was false. And then he admitted, he stood in a courtroom in this building and pled guilty to that. He's used to presenting and appearing calm and cool, things that are false. Do you really think this oath in this chair meant all that much to him if he is the shooter and he's trying to get out from under being charged with a murder? Of course not. Of course not. It is more plausible, it is not just a possible doubt, it is a reasonable one based on all the other points I've hit on, that Justin Franklin killed Carlton Eaton.

> *   *   *

> But he admitted he's violent. That's what you know about Justin Franklin. He's false, a liar, and violent. And his is the only DNA between the legs of Carlton Eaton at the park. That right there is reasonable doubt. He likes to retaliate against people.

Defense counsel's opening statement, cross-examination of Franklin, and closing argument clearly involved challenges to the credibility of Franklin's account of the offense. The prosecutor's statements were responsive to the evidence and to the defense theory presented at trial and, viewed in context, was not improper.

Furthermore, to the extent that the prosecutor's remarks could be considered improper, defendant is not entitled to a new trial. In its final instructions, the trial court instructed the jury that the lawyers' statements and arguments are not evidence, that the jurors were the sole judges of witness credibility, and that the jury was to follow the court's instructions. The trial court's instructions were sufficient to dispel any possible prejudice arising from the prosecutor's remarks and to protect defendant's substantial rights. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). Jurors are presumed to have followed their instructions, *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011), and defendant has not provided any basis for concluding that the jurors failed to do so in this case.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that defense counsel was ineffective for failing to object to the prosecutor's conduct of arguing during closing argument that Franklin had no reason to lie. For the reasons previously discussed, the prosecutor's argument, which was responsive to the evidence and defense theories presented at trial, was not improper. Therefore, it would not have been objectionably reasonable for trial counsel to object. Further, there is no reasonable probability that counsel's failure to object affected the outcome of defendant's trial because the trial court's jury instructions were sufficient to dispel any possible prejudice. Consequently, defendant cannot establish a claim of ineffective assistance of counsel on this basis.

## IV. SENTENCING

Lastly, defendant presents two arguments in support of his request to be resentenced, neither of which have merit.

## A. UNREASONABLE AND DISPROPORTIONATE SENTENCE

Defendant argues that his 562-month minimum sentence for second-degree murder is a "de facto life sentence," and thus is disproportionate and unreasonable. We disagree.

The trial court scored the guidelines for defendant's conviction of second-degree murder, and sentenced him to a minimum term of 562 months, which is at the top of, but within, the applicable guidelines range of 270 to 562 months.[3] Because defendant did not receive a sentence that exceeds the advisory sentencing guidelines range, his sentence may not be reviewed for

---

[3] Second-degree murder is a class M2 offense, MCL 777.16p. The trial court's scoring of the guidelines placed defendant in the E-II cell of the applicable sentencing grid, for which the minimum sentence range is 270 to 450 months. MCL 777.61. Because defendant was sentenced as a second-offense habitual offender, the upper limit of his guidelines range was increased by 25%, MCL 777.21(3)(a), resulting in an enhanced sentencing guidelines range of 270 to 562 months.

reasonableness. "[T]his Court is required to review for reasonableness only those sentences that depart from the range recommended by the statutory guidelines." *Anderson*, 322 Mich App at 636. If a trial court does not depart from the recommended minimum sentence range, this Court need not evaluate the defendant's sentence for reasonableness and must affirm unless there was an error in scoring the guidelines or the trial court relied on inaccurate information. *Id.* at 636-637, citing MCL 769.34(10) (if a sentence is within the sentencing guidelines range, this Court must affirm the sentence absent a scoring error or reliance on inaccurate information). Defendant does not argue that there was any error in the calculation of his sentencing guidelines range, or that the trial court relied on inaccurate information. Accordingly, because defendant's minimum sentence for second-degree murder is within the appropriate guidelines range, we must affirm defendant's sentence, absent any constitutional violation.

## B. CRUEL AND/OR UNUSUAL PUNISHMENT

Defendant also argues that his 562-month minimum sentence constitutes cruel or unusual punishment. To preserve a claim that a defendant's sentence is unconstitutionally cruel or unusual, the defendant must raise the claim in the trial court. See *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). Because defendant did not argue below that a guidelines sentence would be cruel or unusual punishment, this issue is unpreserved and defendant must demonstrate a plain error affecting his substantial rights. *Carines*, 460 Mich at 763-764; *Anderson*, 322 Mich App at 634.

"The Michigan Constitution prohibits cruel *or* unusual punishment, Const 1963, art 1, § 16,[4] whereas the United States Constitution prohibits cruel *and* unusual punishment, US Const, Am VIII.[5]" *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011). This includes "a prohibition on grossly disproportionate sentences." *People v Bullock*, 440 Mich 15, 32; 485 NW2d 866 (1992). But "[a] sentence within the guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual." *Bowling*, 299 Mich App at 558. "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Id.* (quotation marks and citation omitted).

Defendant's primary dispute, that his sentence is a de facto life sentence because he will be 119 years after serving the 99-year *maximum* sentence for second-degree murder, is unavailing. Defendant emphasizes that while he will be 67 years old after serving the 562-month minimum sentence, "there is no guarantee that [he] will be released by that date." Defendant incorrectly assumes that he is entitled to parole, i.e., to be released. See *Bowling*, 299 Mich App at 558. A sentence is not cruel or unusual because the defendant's age will effectively result in the defendant spending the remainder of his or her life in jail. *Id.* As previously discussed, defendant's sentence

---

[4] The Michigan Constitution provides that "cruel or unusual punishment shall not be inflicted[.]" Const 1963, art 1, § 16.

[5] The Eighth Amendment of the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." US Const, Am VIII.

is within the guidelines range.  Therefore it is presumptively not cruel or unusual.  *Id*.  Defendant's age is not a basis to overcome that presumption.  Therefore, defendant has not demonstrated that his sentence is cruel or unusual.

Affirmed.

/s/ David H. Sawyer
/s/ Deborah A. Servitto
/s/ Michelle M. Rick